No. 12359

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

———————————

ROBERT A. NICE,

Plaintiff and Respondent,

-vs-

THE STATE OF MONTANA; STATE BOARD OF
EQUALIZATION, an agency of the State
of Montana; J. MORLEY COOPER, Chairman of
the Board, et al.,

Defendants and Appellants.

———————————

Appeal from:   District Court of the First Judicial District,
Honorable Peter Meloy, Judge presiding.

Counsel of Record:

For Appellants:

Michael E. Cooper argued, Helena, Montana

For Respondent:

Bolkovatz, Romine and Bell, Helena, Montana
John F. Bell argued, Helena, Montana

———————————

Submitted:  January 25, 1973

Decided: **MAR 9  1973**

Filed: **MAR 9  1973**

_Thomas J. Kearney_
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This is an appeal by the State Board of Equalization from an adverse judgment in an income tax case in the district court of Lewis and Clark County, the Honorable Peter G. Meloy, district judge, sitting without a jury. The case involves state income tax liability on federal retirement income received by retired military personnel living in Montana.

The district court held that the first $3,600 of federal retirement income received by a retired United States Air Force officer residing in Montana is exempt from state income tax. We affirm.

The facts of the case are not in dispute as the case was submitted to the district court for decision on the basis of an agreed statement of fact. Plaintiff Robert A. Nice is a legal resident of Montana and receives retirement pay from the federal government as a retired United States Air Force officer pursuant to the provisions of 10 U.S.C.A. § 8911, et seq. The Montana legislature enacted into law a provision, now codified as section 84-4905(2)(c), R.C.M. 1947, exempting from Montana income tax "All benefits received under the federal employees retirement act not in excess of thirty-six hundred dollars ($3,600)." (Emphasis added.) In fact there has never been an act entitled "the federal employees retirement act".

Some five years later on December 31, 1968, the State Board of Equalization promulgated an administrative regulation interpreting "the federal employees retirement act" to mean "Civil Service Retirement Act". This interpretation is contained in Board Regulation 501(b)(3) permitting an exclusion from adjusted gross income for Montana income tax purposes as follows:

> "Civil Service Retirement Act benefits to the extent the amount subject to the federal income tax for the taxable year does not exceed $3,600."

The 1971 Montana legislature subsequently killed HB 84 which, among other things, would have exempted from adjusted gross income "Amounts received by a retired person as an annuity, pension or endowment under a

- 2 -

formal private, municipal, state or federal retirement plan or system, to the extent the total of such amounts includable in federal adjusted gross income does not exceed $3,600.00". The proposed 1971 legislation would have, among other things, substituted the foregoing language for the language of the 1963 legislation heretofore quoted.

In his 1969 state income tax return, plaintiff paid under protest the additional sum of $205.79 plus interest of $9.26 which reflected his disputed state income tax liability on the first $3,600 of his federal military retirement pay.

After exhausting his administrative remedies, plaintiff filed the instant action in the district court to recover the foregoing sums paid under protest. Plaintiff prevailed in the district court and now the State Board of Equalization has appealed from that judgment.

The sole issue upon appeal is whether section 84-4905(2), R.C.M. 1947, exempts from state income tax liability the first $3,600 of his military retirement benefits.

The function of the Court is to interpret the intention of the legislature, if at all possible, from the plain meaning of the words used, and if the meaning of the statute can be determined from the language used, the Court is not at liberty to add or detract language from the statute in question. Sections 93-401-15, 93-401-16, R.C.M. 1947; Mont. Assn. of Tob. Etc. v. Brd. of Eq., 156 Mont. 108, 476 P.2d 775; Dunphy v. Anaconda Co., 151 Mont. 76, 438 P.2d 660.

Here, however, the meaning of the statute cannot be ascertained from its language. The statute is ambiguous in that it is susceptible of two meanings: (1) that the legislature referred to one specific act, i.e. the Civil Service Retirement Act, or (2) that the legislature used the words "the federal employees retirement act" in its broad generic sense, not referring to any one specific act but to federal legislation in general providing retirement benefits for federal employees.

The Board contends that the definite article "the" preceding the

- 3 -

phrase, "federal employees retirement act", is commonly and ordinarily used to particularize the subject spoken of and thus refers to the certain object, "act". Therefore, the Board concludes that the legislature intended to refer to one specific act only.

The Board goes on to argue that the only particular act generally providing for federal employees retirement is the act with the popular name "Civil Service Retirement Act", codified in 5 U.S.C.A. § 8331, et seq. The Board would have us construe legislative intent as referring to this particular act. Under the Civil Service Retirement Act most federal employees are covered, but not retirees of the military, Foreign Service Corps, judiciary, temporary workers or employees subject to other retirement systems provided by the federal government.

As the statute is ambiguous on its face, precise grammatical rules standing alone are not controlling, but rather the statute must be interpreted in a reasonable manner to give effect to the statute as a whole. Home Bldg. & Loan v. Bd. of Equalization, 141 Mont. 113, 375 P.2d 312; Bresnahan v. District Court, 127 Mont. 310, 263 P.2d 968. Interpreting the statute in its entirety, it is logical to presume that the legislature intended to use the term "the federal employees retirement act" in its broad generic sense to include all federal legislation providing retirement benefits. Otherwise, an irrational classification of federal employees for exemption purposes would result with no discernible purpose.

Section 84-4905(1), R.C.M. 1947, determines the taxpayers' adjusted gross income as defined in section 62 of the Internal Revenue Code. From this plaintiff is permitted to exempt the $3,600 in question. This interpretation would harmonize with federal taxation of retirement income, whereby military retirement comes under the general definition of "public ... retirement system". Int. Rev. Code of 1954, § 37.

Construing section 84-4905, R.C.M. 1947, to include all federal retirement systems in conformity with the federal tax code appears more consistent with the purpose of the exemption than the interpretation urged by

the Board.

The Board contends that subsections (d), (e) and (f) of section 84-4905(2), enacted subsequent to subsection (c), allow benefits received under certain retirement acts to be exempt from adjusted gross income. In each of the above subsections a specific retirement act is referred to. Under these acts -- the Montana Teachers Retirement Act, the Montana Public Employees Act, and the Montana Highway Patrol Retirement Act -- the benefits exempted were contributed by the employees to the retirement funds.

While it may be argued these distinctions exist, there is nothing to indicate that these state retirement exemptions were relevant considerations in determining legislative intent in enactment of federal retirement act exemptions. It is just as logical to interpret the statute as referring to federal retirement benefits generally rather than to one specific act.

Additionally, we note that in appropriating the pay for military personnel, Congress took into consideration living quarters, subsistence allowances and retirement benefits. In determining the level of military compensation Congress has "imputed deduction for retired pay cost". 2 U.S. Code Congressional and Administrative News 2748 (1965).

The Board also contends that the definition of "federal employees" should not include military personnel. We have no reason to believe that the legislature intended to divide federal employees into separate classifications, one for civil and another for military employees. Where a taxing statute is susceptible of two constructions, any reasonable doubt as to persons intended to be within the particular tax should be resolved against the taxing authority. Cherry Lanes Farms v. Treasurer, Gall. Co., 153 Mont. 240, 456 P.2d 296.

The Board argues that the defeat of HB 84 by the Montana legislature supports its position that the legislature did not intend to exempt the first $3,600 of military retirement pay from state income tax liability. HB 84 would have exempted from gross income the first $3,600 of amounts received by retired

military employees. However, it would have exempted a similar amount from all annuities, pensions and endowments under formal private retirement plans as well. Under such circumstances the vitality of such argument disappears.

A final contention made by the Board is that when a statute is unclear and ambiguous the Court should give great weight to the interpretation of the statute placed upon it by the Board's regulation because it has been uniformly and consistently applied and acquiesced in for a number of years. Bartels v. Miles City, 145 Mont. 116, 399 P.2d 768. It should be noted, however, that the particular subsection at issue here became effective July 1, 1963, but the Board did not promulgate its regulation until five years later in December 1968, immediately before the taxable year in question. Under such circumstances the basis of the Board's contention does not exist.

For these reasons the district court was correct in interpreting section 84-4905, R.C.M. 1947, to allow plaintiff to exempt the first $3,600 of his military retirement pay from state income tax liability.

The judgment of the district court is affirmed.

_____
Associate Justice

We concur:

_____
Chief Justice

_____

_____
Associate Justices

Mr. Justice John Conway Harrison did not participate in this cause.