No. 90-630

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

FILED

JUL - 2 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

IN THE MATTER OF THE
PARENTAL RIGHTS OF
BABY GIRL W.,

A Minor Child.

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Edmund F. Sheehy, Jr.; Cannon & Sheehy, Helena,
Montana

For Respondent:

William P. Driscoll and Michael S. Lattier; Gough,
Shanahan, Johnson & Waterman, Helena, Montana
Randi Hood; Public Defender's Office, Helena,
Montana
Nicholas C. Jacques, Attorney at Law, Helena,
Montana

Submitted on Briefs:  May 10, 1991

Decided:  July 2, 1991

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

R.T.C., the natural father of Baby Girl W., appeals an order of the First Judicial District, Lewis and Clark County, which terminated the parental rights of R.T.C. and D.M.W., the natural mother, to Baby Girl W., awarded custody of Baby Girl W. to Catholic Social Services for Montana, Inc. (CSS), and granted CSS the right to consent to Baby Girl W.'s adoption. We affirm.

R.T.C. presents the following three issues for review. We note that we restate the first issue:

1. Did the District Court err in denying R.T.W.'s August 14, 1989 motion to dismiss?

2. Did the District Court err when it determined that it had subject matter jurisdiction over this matter?

3. Did the District Court err when it determined that R.T.C. could not specifically determine who had the right to adopt his child when he terminated his parental rights?

On March 29, 1989, thirty-eight-year-old D.M.W. gave birth to Baby Girl W. in Great Falls, Montana. It is undisputed that R.T.C. is the natural father of Baby Girl W. D.M.W. and R.T.C., both residents of Wyoming, never married, but lived together intermittently from December of 1985 until February of 1989. They continue to live apart in Wyoming.

On March 30, 1989, D.M.W. executed a voluntary release of custody, consent to termination of parental rights for purposes of adoptive placement, and a waiver of right to notice and right to

appear regarding Baby Girl W. In this document, D.M.W. transferred and assigned custodial rights of Baby Girl W. to CSS, a licensed adoption agency. Thereafter, CSS placed Baby Girl W. in a foster home in Helena, Montana.

On April 18, 1989, CSS petitioned the District Court for termination of D.M.W. and R.T.C.'s parental rights. In its petition, CSS also sought an award of custody and the right to consent to Baby Girl W.'s adoption. On April 18, 1989, the District Court notified R.T.C. of a May 15, 1989 hearing concerning the termination of his parental rights.

R.T.C. responded by letter to the District Court and to CSS's counsel, and later appeared at the May 15, 1989 hearing to contest the termination of his parental rights. At this hearing, the District Court determined R.T.C. to be indigent, appointed him counsel, and continued the termination hearing to a later date.

On August 14, 1989, R.T.C. moved the court to dismiss this action on the ground that CSS did not have standing. The District Court dismissed R.T.C.'s motion to dismiss in an order dated September 26, 1989.

On April 20, 1990, R.T.C. moved the court to dismiss this action on the ground that the court lacked subject matter jurisdiction under § 40-4-211, MCA. The District Court determined in an order dated July 13, 1990, that R.T.C.'s reliance on § 40-4-211, MCA, was misplaced; the court held that it had subject matter jurisdiction of this action under §§ 41-3-101 to -1143, MCA, based

3

on the presence of Baby Girl W. in Montana. The District Court further held that even if § 40-4-211, MCA, applied, the court still had subject matter jurisdiction of this action because Montana is the "home state" of Baby Girl W.

On October 15, 1990, R.T.C. executed a voluntary release of custody, consent to termination of parental rights for purposes of adoptive placement, and waiver of right to notice and right to appear. In this document, R.T.C. stated in part:

> 2. I hereby voluntarily relinquish, transfer and assign to [the foster parents] . . . all of the custody rights which I now have to the minor child because I believe the transfer and assignment made herein is in the best interests of the minor child with respect to her physical, mental, social, and economic well being.
>
> . . .
>
> 5. I do hereby voluntarily consent to the termination of any and all of my parental rights in my child forever; and I agree to the adoption of my minor child by [the foster parents] because such adoptive placement is in the best interests of my minor child with respect to her physical, mental, social and economic well being.
>
> 6. I do hereby declare that this termination of parental rights, however, does not eliminate my right of visitation to my minor child and my right to have contact with the same. It is my understanding that [the foster parents] have consented to keeping me informed about my daughter and to allow me visitation as deemed reasonable between them and myself. However, I do expressly agree that I am not entitled to have custody of my daughter and specifically agree not to take my daughter outside the jurisdiction of the State of

4

> Montana without the written consent of [the foster parents].

On October 17, 1990, the District Court heard argument concerning CSS's petition to, <u>inter alia</u>, terminate parental rights of Baby Girl W. It is undisputed that R.T.C. received notice of this hearing. R.T.C. did not attend this hearing, but his attorney presented to the court his voluntary release of custody, consent to termination of parental rights for purposes of adoptive placement, and waiver of right to notice and right to appear. Following discussion regarding this document, the District Court judge stated:

> This signed document that he [R.T.C.] has provided this Court among a whole lot of other things he has stated that he is the child's father . . . that he voluntarily relinquishes all of his parental rights, he believes that that [sic] is in the best interest of his child.

Later R.T.C.'s counsel stated:

> Your honor, I guess before we proceed here I think the Court before we took a recess made a finding that [R.T.C.] has acknowledged that the best interest of the child are [sic] not going to be served by the child being with him [R.T.C.]. Therefore I would have an objection to any evidence about or concerning [R.T.C.]. I don't think that is relevant at this point.

The District Court judge agreed and disallowed any evidence regarding R.T.C., even though CSS was prepared to present witness testimony regarding R.T.C.'s lack of fitness as a parent. The District Court stated "Well, that testimony, I don't believe, is necessary at this particular hearing since [R.T.C.] has stated that

he does not want custody of the child, that it is in the best interest of the child that he relinquish his parental rights of the child."

In an order dated October 19, 1990, the District Court terminated R.T.C. and D.M.W.'s parental rights, awarded custody of Baby Girl W. to CSS, and granted CSS the right to consent to Baby Girl W.'s adoption. From this order, R.T.C. appeals.

1. Did the District Court err in denying R.T.C.'s August 14, 1989 motion to dismiss?

R.T.C. argues that the District Court erred when it denied his August 14, 1989 motion to dismiss CSS's petition based on the ground that CSS had no standing. R.T.C. argues that CSS needed and lacked R.T.C.'s consent under § 40-8-111(1)(a), MCA, before it could petition the court for Baby Girl W.'s adoption.

R.T.C.'s argument fails as it reflects a misunderstanding of the nature of CSS's petition. CSS's petition states:

> NOW, THEREFORE, Petitioner [CSS] prays this court [to] issue an order as follows:
>
> 1. Terminating the parental rights of the child's natural mother . . . and the child's natural father . . . .
>
> 2. Awarding permanent, legal custody of the child to Catholic Social Services for Montana, Inc., a licensed adoption agency for the state of Montana.
>
> 3. Authorizing Catholic Social Services for Montana, Inc., to appear in any court where

6

> adoption proceedings are pending and consent
> to the adoption of Baby Girl [W.].

In its September 26, 1989 order, the District Court properly held that CSS's petition did not pray for Baby Girl W.'s adoption. Instead, the District Court held that the petition, inter alia, prayed for the termination of R.T.C.'s parental rights regarding Baby Girl W., which is a necessary procedural step before an adoption proceeding can be initiated. The District Court properly stated that CSS did not need R.T.C.'s consent to petition the court for the termination of his parental rights. Therefore, the District Court properly held that § 40-8-111(1)(a), MCA, a statute requiring parental consent prior to a child's adoption in most instances, does not apply to these facts. See also Brost v. Glasgow (1982), 200 Mont. 194, 202-03, 651 P.2d 32, 36 (a discussion regarding the legislative history of § 40-8-111, MCA, which indicates that terminating parental rights should be determined in separate proceedings from adoption proceedings).

As stated by the District Court, the applicable statute, § 40-6-125, MCA, provides:

> (1) If the mother of a child born out of wedlock proposes to relinquish the child for adoption and the relinquishment or consent of the birth father cannot be obtained, the child may not be placed for adoption until the parental rights of the father are terminated by the court as provided in this part, by the court pursuant to Title 41, chapter 3, or by a court of competent jurisdiction in another state or county.

7

> (2) Pending the termination or other disposition of the rights of the father of the child born out of wedlock, the mother may execute a relinquishment terminating her rights to the child. If the mother relinquishes the child, the agency of the state of Montana or the licensed adoption agency to whom the child is relinquished may file a petition under this part or a petition of dependency or neglect pursuant to Title 41, chapter 3. Pending disposition of the petition, the court may enter an order authorizing temporary care of the child.

See also §§ 40-6-128 and -130, MCA

Here, it is undisputed that Baby Girl W. was born out of wedlock. D.M.W., the child's mother executed a voluntary relinquishment of custody to CSS, and she voluntarily consented to termination of her parental rights. In this document, D.M.W. expressly authorized CSS to arrange for and complete the adoptive placement of Baby Girl W. by such persons as selected by CSS. CSS then properly proceeded by petitioning the District Court to 1) terminate the parental rights of R.T.C. and D.M.W. to Baby Girl W., 2) award custody of Baby Girl W. to CSS, and 3) grant CSS the exclusive right to consent to Baby Girl W.'s adoption before it proceeded with the commencement of an adoption proceeding. We therefore hold that the District Court committed no error when it dismissed R.T.C.'s motion to dismiss on the ground that CSS had no standing.

2. Did the District Court err when it determined that it had subject matter jurisdiction over this matter?

8

In its order dismissing R.T.C.'s April 20, 1990 motion to dismiss, the District Court held that it had subject matter jurisdiction of this matter under the dependency and neglect statutes, §§ 41-3-101 to -1143, MCA. Under these statutes, subject matter jurisdiction is granted to the District Court if the child is present in Montana. Section 41-3-103(1)(a), MCA. R.T.C. argues that the District Court improperly applied the abuse and neglect statutes to these facts. Instead, R.T.C. argues that § 40-4-211, MCA, a jurisdictional statute involving custody matters, applies. Under § 40-4-211, MCA, R.T.C. argues that because he and D.M.W. are Wyoming residents, Montana is not Baby Girl W.'s "home state" and the District Court does not have subject matter jurisdiction.

This action was filed under the provisions of §§ 40-6-125 to -135, MCA. Unfortunately, these statutes provide no specific guidance for jurisdiction where one or more of the parties reside outside of Montana. We, however, agree with the District Court that it had subject matter jurisdiction of this matter under the abuse and neglect statutes.

CSS petitioned for, _inter alia_, the termination of parental rights regarding Baby Girl W. As the District Court states:

> That action [termination of parental rights] necessarily proceeds as one to first determine whether the child is a youth in need of care under [Title 41, Chapter 3, MCA]; in the event such a determination is made by the court, then a specific procedure to terminate parental rights must be followed. Sections 41-3-601 to 41-3-612, MCA. Jurisdiction under this Chapter is conferred under Section 41-3-103,

9

> MCA, which states in part: "In all matters arising under this chapter, the youth court shall have concurrent jurisdiction with the district court over. . .all youths who are within the state of Montana for any purpose."
>
> This same chapter governs a child whose parents have voluntarily relinquished custody of the child and whose legal custody has been transferred to a licensed agency. Section 41-3-102(10)(f), MCA. It also includes the Court's authority to transfer legal custody to a child-placing agency. Section 41-3-406(3)(b), MCA.
>
> Since the present petition alleges that the child has been voluntarily relinquished to a licensed agency and that the father's parental rights should be terminated, the action is governed by the Dependency and Neglect Statutes, and jurisdiction is established by the mere fact that the child is in Montana, in accordance with Section 41-3-103, MCA.

We agree with the District Court's reasoning and hold that the Montana's dependency and neglect statutes, §§ 41-3-101 to -1143, MCA, apply to these facts. Accordingly, the District Court has subject matter jurisdiction over this matter based solely on the presence of Baby Girl W. in Montana. In passing, we wish to note that we agree with the District Court that even if § 40-4-211, MCA, applied, the District Court would still have subject matter jurisdiction of this matter because 1) Montana is the "home state" of Baby Girl W. under § 40-4-211(1)(a)(i), MCA, and 2) it is in Baby Girl W.'s best interest that the District Court assume jurisdiction of this matter under § 40-4-211(1)(b), MCA.

3. Did the District Court err when it determined that R.T.C. could not specifically determine who had the right to adopt his child when he terminated his parental rights?

R.T.C. executed a voluntary release of custody, consent to termination of parental rights for purposes of adoptive placement, and waiver of right to notice and right to appear (release of custody) on October 15, 1990. In his release of custody, R.T.C. relinquished his parental rights to Baby Girl W. and agreed to her adoption by her foster parents.

On October 17, 1990, the District Court conducted a hearing regarding CSS's April 18, 1989 petition. R.T.C. did not attend the hearing. R.T.C.'s counsel presented R.T.C.'s release of custody to the court. Following discussion regarding R.T.C.'s release of custody, R.T.C.'s counsel objected to, and the court disallowed, the admittance of any testimony regarding R.T.C. in light of R.T.C.'s release of custody, where he stated that it was in the child's best interest that he relinquish his parental rights. On October 19, 1990, the District Court terminated the parental rights of R.T.C. and D.M.W. to Baby Girl W., awarded custody of Baby Girl W. to CSS, and granted CSS the right to consent to Baby Girl W.'s adoption.

R.T.C. argues that his release of custody was limited to Baby Girl W.'s adoption by the foster parents only. R.T.C.'s argument lacks merit. R.T.C. failed to appear at the October 17, 1990 hearing regarding the termination of his parental rights, and

11

therefore his parental rights were subject to termination under §§ 40-6-128(6) and -129, MCA. Additionally, R.T.C. executed a release of custody, which also subjected his parental rights to termination under § 40-6-129(1)(a), MCA. Under these facts, R.T.C. has no authority to direct the placement of his child.

Furthermore, the District Court awarded custody of Baby Girl W. to CSS, a duly qualified adoption agency, holding that this action was in Baby Girl W.'s best interest. There was nothing erroneous about the District Court's decision. In conclusion, we hold that the District Court committed no error when it terminated the parental rights of R.T.C. and D.M.W. to Baby Girl W., awarded custody of Baby Girl W. to CSS, and granted CSS the authority to consent to Baby Girl W.'s adoption.

Affirmed.

Chief Justice

We concur:

Justices

12