NO. 95-299

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN THE MATTER OF THE
ADOPTION OF JANE DOE,
JOHN DOE, and MARY DOE,



FILED

JUL 22 1996

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Nineteenth Judicial District,
                In and for the County of Lincoln,
                The Honorable Michael C. Prezeau, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        Ann C. German, Libby, Montana

        For Respondent:

        H. James Oleson, Kalispell, Montana

        For Amici:

                Ann Gilkey, Special Assistant Attorney General,
                Department of Public Health and Human Services,
                Helena, Montana

                                        Heard: May 8, 1996
                                    Submitted:  May 8, 1996

                                    Decided: July 22, 1996

Filed:

_____
                Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Debra 0. (Debra), the natural mother of Jane Doe, John Doe, and Mary Doe (the children), appeals the decision of the Nineteenth Judicial District Court, Lincoln County, terminating her parental rights and granting the petition to adopt of Debra's mother, Barbara G. (Barbara). We reverse.

## ISSUES

The following restated issues are dispositive of this appeal:

1. Did the District Court err by terminating Debra's parental rights to her children?

2. Did the District Court err by finding that Debra had abandoned the children?

3. Did the District Court err by finding that Debra was able to contribute to the support of the children during the year prior to the filing of Barbara's petition to adopt the children?

## FACTS

Debra is the natural mother of the three children at issue in this case, who are currently eight, six, and four years old, respectively. Debra has a history of drug addiction and is currently incarcerated at the Nevada Women's Prison at Reno, serving **time** for narcotics charges and escape. She was incarcerated in late 1992 to serve a two-year sentence for drug charges. During her prison term, Debra undertook counseling for her addiction and began participating in a twelve-step program.

In May of 1993, Debra' began a community-based work-release program which required her to work at a restaurant during the day

2

and return to a half-way house at night. Shortly thereafter, Debra walked away from her job, which constituted an escape. Debra testified that she continued to attend twelve-step meetings and maintained her sobriety during her escape. She was apprehended three months later. After her capture in September of 1993, Debra was charged with escape and also served with an outstanding warrant for an unresolved narcotics charge from September, 1992. She pled guilty to both charges and was returned to prison.

Since early 1992, the children have resided with their grandmother, Barbara, in Montana. It is undisputed that Barbara has been very involved in the children's upbringing all their lives. At times she lived with Debra and looked after the children; at other times, Debra would send the children to live with Barbara, claiming that she was unable to care for them herself. In February of 1993, Debra executed documents making Barbara the guardian of the children and giving her temporary physical custody of them.

In September of 1994, Barbara petitioned the District Court to allow her to adopt the children, alleging that Debra had abandoned them and that, although able, Debra had failed to provide any support for the children in the year prior to the filing date of the petition.

The District Court held a hearing in the matter in December of 1994, and issued its findings of fact, conclusions of law, and order in April of 1995. It found that Debra had both abandoned the children and failed to contribute to their support even though she

was able to do so. For these reasons, the District court terminated her parental rights and, for the same reasons, terminated the parental rights of the children's fathers. None of the children's fathers appeared at the termination hearing and none of them have appealed the decision of the District Court. At the same hearing, the District Court granted Barbara's petition to adopt the children. Debra appeals both the termination of her parental rights and the subsequent adoption of the children by her mother.

*STANDARD OF REVIEW*

The District Court is in the best position to hear testimony and evaluate evidence in adoption cases. This Court will not reverse a district court's findings of fact in such cases unless the findings are clearly erroneous. Rule 52(a), M.R.Civ.P.; In the Matter of J.S. and P.S. (1994), 269 Mont. 170, 173, 887 P.2d 719, 720. This Court will not reverse a district court's conclusions of law in such cases unless the conclusions reflect a mistake of law. In re the Adoption of S.P.M. (1994), 266 Mont. 269, 271, 880 P.2d 297, 298. However, because the termination of parental rights involves a fundamental liberty interest, a decree which purports to terminate such rights must be supported by clear and convincing evidence. Adoption of S.P.M., 880 P.2d at 298 (citing In re the Adoption of R.M. (1990), 241 Mont. 111, 114, 785 P.2d 709, 711).

DISCUSSION

Montana law dictates that a district court generally may order the adoption of a child only when both the child's parents, if

4

living, consent in writing to the adoption. Section 40-8-111(1)(a), MCA; In re the Adoption of J.B.T. (1991), 250 Mont. 205, 207, 819 P.2d 178, 179. However, § 40-8-111(1)(a), MCA, contains six subsections delineating various exceptional circumstances in which the parent's consent is not required in order to adopt the child.

The District Court cited three of these subsections as reasons why Debra's consent to the adoption was not necessary--abandonment, lack of support, and judicial termination of parental rights. Section 40-8-111(1)(a)(iii), MCA, provides that "consent is not required from a father or mother . . who has, in the state of Montana or in any other state of the United States, willfully abandoned the child . ." Section 40-8-111(1)(a)(iv), MCA, provides that

> consent is not required from a father or mother . . . who has caused the child to be maintained by any public or private children's institution, any charitable agency, or any licensed adoption agency or the department of public health and human services of the state of Montana for a period of one year without contributing to the support of the child during that period, if able . .

Section 40-8-111(1)(a)(vi), MCA, provides that "consent is not required from a father or mother whose parental rights have been judicially terminated."

## ISSUE 1

Did the District Court err by terminating Debra's parental rights to her children?

In this case, the District Court declared Debra's parental rights to be judicially terminated and, accordingly, deemed that her consent was not required before the adoption of the children.

5

However, judicial termination of parental rights cannot be considered an independent reason for authorizing this adoption because the determination of whether Debra's parental rights should be terminated was not independently made.

We have held that, absent parental consent, termination of parental rights "is a necessary procedural stop before an adoption proceeding can be initiated." In the Matter of the Parental Rights of Baby Girl W. (1991), 249 Mont. 206, 210, 814 P.2d 976, 978 (emphasis added). Moreover, § 40-8-111(1)(a)(vi), MCA, provides that consent need not be obtained from a parent whose parental rights have been terminated. This subsection of the statute, therefore, contemplates a situation where the parent's rights were terminated by a separate hearing or action at some point in the past. Section 40-8-111(1)(a)(vi), MCA, does not contemplate a concomitant termination of the parent's rights and adoption of the child by another party, especially where, as here, it is unclear which procedure occurred first.

In any event, the reasons cited for the District Court's order terminating Debra's parental rights were the same as the remaining two reasons cited as the rationale for authorizing the adoption-- namely, that Debra abandoned the children or, in the alternative, failed to support them for one year before the hearing even though she was able to do so. Accordingly, we review the District Court's findings and conclusions regarding abandonment and non-support to discover whether they justify either the termination of Debra's parental rights or the adoption of the children without her

6

consent. For the reasons set forth in issues two and three we hold that the court erred in terminating Debra's parental rights.

## ISSUE 2

Did the District Court err by finding that Debra had abandoned the children?

One of the reasons given by the District Court for judicially terminating Debra's parental rights and allowing the adoption was that Debra had abandoned the children. As the petitioner, Barbara had the burden of proving that the children were in fact abandoned. Adoption of S.P.M., 880 P.2d at 298 (citing In re Adoption of S.L.R. (1982), 196 Mont. 411, 640 P.2d 886).

As used in the child welfare statutes, abandonment is defined

> leaving the child under circumstances that make reasonable the belief that the parent or other person does not intend to resume care of the child in the future or willfully surrenders physical custody for a period of 6 months and during that period does not manifest to the child and the person having physical custody of the child a firm intention to resume physical custody or to make permanent legal arrangements for the care of the child . . . .

Section 41-3-102(7)(e), MCA. Under this definition, the period for establishing abandonment is six months. In the Matter of M.J.D. (1987), 225 Mont. 200, 205, 731 P.2d 937, 940.

In this case, Debra was incarcerated for almost two years prior to the filing of Barbara's petition. It is unquestionable that Debra willingly left the children with Barbara before she went to prison. We therefore must ask whether Debra failed to manifest a firm intention to resume physical custody, or whether the

7

circumstances of this case supported a reasonable belief that Debra did not intend to resume caring for the children in the future.

The District Court did not make specific findings regarding abandonment even though it listed abandonment as a reason for terminating Debra's parental rights and allowing Barbara's adoption of the children. However, the trial testimony of both Barbara and Debra indicate that both parties understood that Debra wanted Barbara to care for the children only temporarily:

> Q: Has Debbie ever mentioned to you that you could adopt the kids?
> Barbara: No, she has always been against that.
> Q: Has she ever mentioned to you that you should have guardianship of the kids?
> Barbara: The only thing that she has ever been agreeable to is temporary custody.
> Q: And why was that, please.
> Barbara: I just don't think that she wants to give them up.
>
> .
>
> Q: Now, I wanted to ask you just a little bit about this adoption proceeding. You understand your mother wants to adopt your three children, your three oldest children?
> Debra: Yes, I do.
> Q: And what is your feeling about that?
> Debra: I don't want her to adopt my children. I love my mother very much. And I entrust her with my children to take care of but I am their mother. And I want a chance to get out and prove to the courts and my mom that I'm capable of taking care of my children.

As Barbara admitted, Debra never assented to anything more than temporary custody because she fully intended to resume the responsibility for her children once she was released from prison. In addition, Debra corresponded regularly with her mother and the children, sending them letters and drawings once or twice each month.

In short, there is no evidence in the record reflecting any action on Debra's part that establishes abandonment. On the contrary, she has attempted to stay in contact with the children from prison and has repeatedly and firmly refused to grant permanent custody of them to her mother. While she unquestionably has been separated from them for an extended period due to her incarceration and also has left them in her mother's care for extended periods of time before that, such separations, voluntary or involuntary, do not rise to the level of abandonment.

We hold that the District Court erred by finding that Debra had abandoned the children.

*ISSUE 3*

Did the District Court err by finding that Debra was able to contribute to the support of the children during the year prior to the filing of Barbara's petition to adopt the children?

The District Court also terminated Debra's parental rights and authorized Barbara's adoption of the children because it found that, although able, Debra had failed to contribute to the support of the children for a period of one year before the filing of the petition, during which period the children were dependent upon state aid. As noted above, this is an acceptable reason for authorizing adoption proceedings without first obtaining parental consent. Section 40-8-111(1)(a)(iv), MCA.

Application of this statutory provision requires a two-tiered analysis. First, the court must determine if the nonconsenting parent failed to contribute to the support of the children during a period of one year prior to the filing of the petition. Second,

9

the court must determine if the nonconsenting parent had the ability to contribute to the support of the children during that year. In re the Adoption of J.B.T. (1991), 250 Mont. 205, 209, 819 P.2d 178, 179 (citations omitted). In determining whether a parent was able to contribute support, a district court must examine several factors, including:

> (1) the parent's ability to earn an income;
> (2) the parent's willingness to earn an income and support his or her child or children;
> (3) the availability of jobs; and
> (4) the parent's use of his or her funds to obtain only the bare necessities of life prior to contributing support to the child or children.

In re the Adoption of K.L.J.K. (1986), 224 Mont. 418, 423, 730 P.2d 1135, 1139; In re the Adoption of V.R.O. (1991), 250 Mont. 517, 520-21, 822 P.2d 83, 85.

In this case, Debra admits that she has not contributed to the support of the children during the year preceding the filing of Barbara's petition. She claims, however, that she was unable to contribute to the children's support during that year because she was in prison the entire time. The District Court found otherwise, noting that Debra sustained a $50 to $100 per day drug habit, as evinced by her plea of guilty to an additional drug charge after being recaptured in September of 1993

Debra's admitted drug addiction alone cannot serve as clear and convincing evidence that she had the means to contribute to her children's support. The relevant inquiry is whether she obtained funds which could have been used for the support of the children which, instead, she chose to spend on drugs. Debra, however,

10

receive any pay for her prison job; the job allowed her only to accumulate additional good time.

No evidence was presented to rebut Debra's uncontroverted testimony that she has been incarcerated for the entire year preceding institution of the adoption proceedings and that she has not had the ability to contribute money to her children's support during that time. The District Court's inference that her past drug activity indicates a present ability to pay child support was not supported by clear or convincing evidence. The District Court therefore erred by concluding that Debra had the ability to contribute to the support of the children during the year preceding Barbara's petition and further erred by terminating her parental rights and allowing the adoption on that basis.

Reversed.

_William E. Hunt_
Justice

We Concur:

_J. A. Turnage_
Chief Justice

_Karla M. Gray_

_Terry Trieweiler_

_W. William Leaphart_

_Justices_

12

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Ann C. German
Attorney at Law
P.O. Box 1530
Libby, MT 59923

Mr. H. James Oleson
Attorney at Law
P.O. Box 2036
Kalispell, MT 59903-2036

Ann Gilkey, Special Asst. Attv General
Department of Public Health and Human Services
P.O. Box 8005
Helena, MT 59604

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *J. Gallagher*
Deputy