No. 96-347

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

IN THE MATTER OF
DECLARING P.E.,
A Youth in Need of Care.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Daniel P. Buckley, Berg, Lilly, Andriolo &
Tollefsen, Bozeman, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Tammy Plubell,
Assistant Attorney General, Helena, Montana; Marty
Lambert, Gallatin County Attorney, Gary Balaz,
Deputy Gallatin County Attorney, Bozeman, Montana

Submitted on Briefs: February 13, 1997

Decided:  March 18, 1997
Filed:

_____
Clerk


Justice William E. Hunt, Sr. delivered the Opinion of the Court.


Linda H. (Linda), the natural mother of P.E., appeals the decision of the Eighteenth Judicial District Court, Gallatin County, terminating her parental rights to P.E. due to abandonment. We affirm.

The sole issue presented on appeal is whether the District Court erred in terminating Lindaþs parental rights due to abandonment.

In the summer of 1994, Linda and her thirteen-year-old daughter P.E. were traveling through Montana in the company of Paul Cress (Cress) and George Townsell (Townsell). All four people lived in the van in which they were traveling or camped at various campgrounds. In July of 1994, the four were staying at a campground in Gallatin County when P.E. became friends with a girl whose family lived in nearby Three Forks. The two girls began having "sleep-overs," where either P.E.þs new friend would stay at the campground or P.E. would go to Three Forks to stay with the girlþs family. After one such visit to Three Forks, the family returned to the campground with P.E. to find that Linda and her traveling companions had checked out. The family then notified the state authorities that P.E. had been left with them.

On July 15, 1994, Cress was arrested for misdemeanor theft in Three Forks. Linda and Townsell were taken into custody as well. While interviewing Linda, the Three Forks marshal informed her that P.E. had been referred to the Department of Family Services (now the Department of Public Health and Human Services) (the Department). The marshal also determined that both Cress and Townsell had extensive criminal records. After Cress bonded out on the theft charge, he, Townsell and Linda left the area, leaving P.E. in the custody of the Department.

On July 18, 1994, DeeAnn Diedrich (Diedrich), a Department social worker, was assigned to investigate Lindaþs abandonment of P.E. At the same time, the Three Forks marshal was actively looking for Cress, who had failed to appear for his scheduled court appearance regarding the theft charge. The marshal determined that Linda, Cress and Townsell were still traveling together and staying in a motel in Pocatello, Idaho.

On July 25, 1994, Diedrich met with Linda in Three Forks. Linda denied that she was still accompanying Cress until confronted with the information obtained by the Three Forks marshal. She then admitted that she was in fact still traveling with him, but said she had lied because she feared that if the Department knew she was

still seeing him they would not return P.E. to her custody. Linda also told Diedrich that she was looking for work and housing in Pocatello. Another meeting was scheduled for August 3, 1994, but Linda failed to show up. Instead she called Diedrich, advising that she was still in Idaho but refusing to leave an address or phone number. Linda also called four additional times in August, and was advised that a hearing regarding P.E.þs status was scheduled for August 22, 1994. Linda did not appear for the hearing; instead, she traveled to Kentucky with Townsell and Cress. Again, she refused to give Diedrich either an address or a phone number where she might be reached. Shortly thereafter, Diedrich transferred the case to a second Department social worker, Marsha Brunett (Brunett).

In October of 1994, Linda and Cress traveled from Kentucky to South Dakota. Linda twice contacted Brunett regarding P.E. during October, but Linda still refused to disclose her location. Brunett advised Linda that Linda needed to acquire permanent employment and a stable home environment before P.E. could be returned to her. On November 14, 1994, Linda called Brunett and finally reported an address and phone number in Watertown, South Dakota. She also advised Brunett that she had obtained employment with a local motel. On December 7, 1994, Brunett requested the assistance of the South Dakota Department of Social Services (South Dakota Department) in doing a home study regarding Lindaþs living arrangements. In making her request, Brunett notified the South Dakota Department of the address and phone number given to her by Linda. She was later advised, however, that the South Dakota Department was unable to locate Linda at the address given. Brunett then attempted to call Linda but found that the phone had been disconnected. Nevertheless, Brunett sent Linda a proposed treatment plan to her last known address in Watertown. Linda testified in the District Court that she never received the proposed plan. However, Brunett also testified that the plan was not returned to her office by the post office as undeliverable. Linda also testified that her understanding was that she only had to obtain adequate housing and a steady job as prerequisites for P.E.þs return to her custody. Brunett testified that, to the contrary, she had advised Linda that she would also need to obtain a mental health assessment and family counseling before P.E. could be returned to her. On February 5, 1995, Brunett transferred the case to another Department social worker, Joe Albro (Albro). On February 9, 1995, the Department petitioned the District Court for temporary legal custody of P.E. The District Court scheduled a hearing in the matter for February 23, 1995.

At the time Albro took over P.E.þs case, the Department did not know Lindaþs whereabouts; it only knew that she apparently had left the Watertown area. After the February 23, 1995 hearing, which Linda did not attend, the Department was granted temporary

custody of P.E. for six months.

On March 2, 1995, Linda contacted Albro and advised him that she was living and working in Sioux Falls, South Dakota. Albro informed Linda that, if she wished to have P.E. returned to her, she had to have suitable housing and gainful employment. Linda testified, again, that she understood these two conditions to be the only prerequisites to P.E.þs return. Like Brunett, Albro testified that he informed Linda that she had to obtain a mental health assessment and counseling as well. It is undisputed, however, that Linda made an appointment to see a counselor in Sioux Falls but then did not keep that appointment.

Albro and Linda arranged for a home study with a South Dakota social worker to evaluate Lindaþs living arrangements. The social worker found Lindaþs apartment to be inadequate because it had only one exit, which presented a fire hazard. Linda then moved to a new apartment and, in May of 1995, the home study was readministered. This time, the South Dakota social worker found the housing to be adequate and recommended that P.E. be returned to Linda. The social worker acknowledged, however, that the determination regarding whether P.E. would be returned to Linda had to be made by the Montana Department, which had temporary custody of the child.

On June 13, 1995, Albro informed Linda that P.E. could not be returned to her care until Linda obtained a mental health assessment and counseling. He further explained that P.E. had been placed in foster care pursuant to the order of the District Court and, therefore, she could not be summarily sent to South Dakota without the prior approval of the court. Albro also advised Linda that the District Court had set a hearing in the matter for August 23, 1995, which he encouraged her to attend.

Linda did not contact Albro again before the August hearing, nor was Albro able to contact her. After checking with her employer, Albro concluded that Linda had again disappeared. She did not attend the August 23, 1995 review hearing, at which the Department advised the District Court that it intended to petition to terminate Lindaþs parental rights to P.E. The District Court scheduled another hearing in the case for February 23, 1996.

On September 21, 1995, Linda called Albro and told him that she was in the Bozeman area and wanted to regain custody of P.E. Linda thereafter acquired an apartment and a job in Bozeman and visited P.E. in person for the first time in over fourteen months. P.E. apparently found the meeting very distressing; she informed Albro that she did not want to see Linda again. Thereafter and in accordance with P.E.þs wishes, Albro did not allow visitation despite Lindaþs repeated requests. On October 15, 1995, Albro attempted to contact Linda at her place of work and was advised that she had taken an indefinite leave of absence. Again, her whereabouts were unknown. On November 1, 1995, the Department petitioned the District Court to terminate Lindaþs parental rights

to P.E. due to abandonment.

On December 15, 1995, Linda again contacted Albro, informing him that she was again in Bozeman, back at work, and interested in regaining custody of P.E. Albro advised her that the Department had petitioned to terminate her parental rights and urged her to obtain an attorney and attend the hearing. Albro also scheduled another visitation between Linda and P.E. Again, the visitation did not go well and P.E. afterwards said that she did not want to see her mother again.

After rescheduling, a hearing was held on February 28, 1996, regarding the Departmentþs petition to terminate Lindaþs parental rights to P.E. After hearing extensive testimony from all the social workers involved, Linda, and others, the District Court determined that Linda had in fact abandoned P.E. and, on that basis, terminated her parental rights. It should also be noted that, at the same hearing, the District Court terminated the parental rights of P.E.þs natural father. The father never appeared in this action and did not appeal the determination of the District Court.

The standard of review of a district courtþs findings of fact in a parental termination case is whether the findings in question are clearly erroneous. In the Matter of J.L., D.L. and A.G. (1996), 922 P.2d 459, 461, 53 St.Rep. 649, 650 (citing In the Matter of J.S. and P.S. (1994), 269 Mont. 170, 173, 887 P.2d 719, 720). The standard of review of a district courtþs conclusions of law in such cases in whether the conclusions are correct. Matter of J.L., 922 P.2d at 461 (citing Matter of J.S., 887 P.2d at 720). Furthermore, "because the termination of parental rights involves a fundamental liberty interest, a decree which purports to terminate such rights must be supported by clear and convincing evidence." In the Matter of the Adoption of Doe (1996), 921 P.2d 875, 878, 53 St.Rep. 631, 632 (citing In the Matter of the Adoption of S.P.M. (1994), 266 Mont. 269, 271, 880 P.2d 297, 298).

Montana statutes provide that consent is not required from a father or mother who has willfully abandoned the child. Section 40-8-111(1)(a)(iii), MCA. Abandonment is defined as

leaving the child under circumstances that make reasonable the belief that the parent or other person does not intend to resume care of the child in the future or willfully surrenders physical custody for a period of 6 months and during that period does not manifest to the child and the person having physical custody of the child a firm intention to resume physical custody or to make permanent legal arrangements for the care of the child . . . .

Section 41-3-102(7)(e), MCA. Under this definition, the period for establishing abandonment is six months if the parent willfully abandons the child. Adoption of Doe, 921 P.2d at 879; Adoption of

S.P.M., 880 P.2d at 299.

In arguing that the District Court erred in finding that she had abandoned P.E., Linda points out that she remained in contact with both the Department and P.E. throughout the fourteen-month period following her separation from her daughter in Three Forks. She also argues that her efforts in obtaining employment and housing in Sioux Falls, South Dakota and later in Bozeman, Montana, as well as the home study conducted in Sioux Falls, indicated her intention to reclaim custody of P.E. and her willingness to work with the Department in order to do so.

In addition, it is undisputed that Linda repeatedly requested visitation with P.E. once Linda returned to Montana. She argues that such requests were inconsistent with a finding of abandonment. Lastly, Linda expressed at trial, and again on appeal, her willingness to work with the Department to implement and follow a treatment program in order to regain custody of P.E. She argues that this, too, is inconsistent with a finding of abandonment. For these reasons, Linda argues that the District Court erred in terminating her parental rights to P.E. based on abandonment.

In response, the State argues that Lindaþs words conflicted with her actions during the fourteen-month period prior to its petition to terminate her parental rights. While acknowledging that Linda made sporadic attempts to contact the Department and P.E. and occasionally expressed an interest in regaining custody of her daughter, the State contends that she took few, if any, concrete steps to accomplish that goal. Instead, the State argues that every step Linda took forward, such as completion of the home study, was followed by a larger step back, such as her then leaving Sioux Falls and disappearing for another three months. The State contends that the circumstances of this case, taken as a whole, confirm that Linda abandoned P.E.

Therefore, this case rests on a factual determination of what actions are sufficient to constitute the manifestation of "a firm intention to resume physical custody." Section 41-3-102(7)(e), MCA. Such factual determinations are properly left to the District Court and, as noted above, will be upheld unless clearly erroneous. Adoption of S.P.M., 880 P.2d at 298. Here, the District Court found that Lindaþs sporadic attempts to remain in contact with P.E. did not constitute a firm intention to resume physical custody. On the contrary, the District Court found that the Department had made reasonable efforts to facilitate a reunion between Linda and P.E., but that Lindaþs actions had frustrated those efforts. The District Court noted that Lindaþs claimed concern for P.E. did not prevent her from traveling at length with individuals she knew to have criminal records nor from disappearing for extended periods with no warning or notification to either the Department or her daughter. The District Court further noted that P.E. has had an extremely difficult time dealing with the fact that her mother

simply left her with virtual strangers and then did not return to claim her for well over a year. Despite this profound emotional trauma, P.E. is currently thriving in foster placement and, at fifteen, exhibits little desire to see her mother.

This Court has held that "[a]bandonment is not an ambulatory thing the legal effects of which a parent may dissipate at will by token efforts at reclaiming a discarded child." In the Matter of the Adoption of C.R.D. (1989), 240 Mont. 106, 110, 782 P.2d 1280, 1283 (quoting In the Matter of the Adoption of David C. (Pa.1978), 387 A.2d 804, 811; In the Matter of the Adoption of Simonton (Neb.1982), 320 N.W.2d 449, 454). In this case, the record is replete with evidence to support the District Court findings that Lindaþs efforts at reclaiming P.E. were sporadic and unsubstantial, and did not constitute a firm intention to reclaim physical custody of P.E. These findings are not clearly erroneous and, therefore, the decision of the District Court is affirmed.

/S/  WILLIAM E. HUNT, SR.


We Concur:

/S/  J. A.  TURNAGE
/S/  KARLA M. GRAY
/S/  JAMES C. NELSON
/S/  TERRY N. TRIEWEILER