JUSTICE WARNER
delivered the Opinion of the Court.
¶1 S.J.D., who is KP.M.’s stepmother, petitioned the Fourth Judicial District Court, Missoula County, for termination of the parental rights of KP.M.’s biological mother, B.J.M., and to adopt K.P.M. The District Court ordered B.J.M.’s parental rights terminated. B.J.M. appeals.
¶2 The sole issue B.J.M. raises on appeal is whether the District Court erred in terminating B.J.M.’s parental rights because B.J.M. was unfit as provided in § 42-2-608(b), MCA.
BACKGROUND
¶3 In December 2003, B.J.M. gave birth to K.P.M. Until a paternity test was conducted in summer 2004, it was unclear who KP.M.’s father was. When it was confirmed that I.J.C. was KP.M.’s father, he and B.J.M. maintained an informal parenting plan for about a year where they shared custody of K.P.M. During this time, B.J.M. was living a transient lifestyle and was unreliable in keeping her commitments to or maintaining contact with I.J.C. and K.P.M.
¶4 In March 2005, B.J.M. transferred primary parenting responsibility to I.J.C. A month later, I.J.C. filed a petition in the District Court to determine that he was K.P.M.’s father and to establish a parenting plan. The District Court granted the petition, determined that I.J.C. was KJP.M.’s father, and established a parenting plan, making I.J.C. KP.M.’s primary parent and giving *172 B.J.M. regularly scheduled weekly and holiday visitation. However, B.J.M. did not regularly visit with K.P.M. and had no contact with either K.P.M. or I.J.C. for substantial periods of time. Between July 2005 and November 2006, B.J.M. made no contact with I.J.C. or K.P.M.
¶5 The parenting plan ordered B.J.M. to pay $103 per month in child support to begin several months later, so she could attempt to achieve greater financial stability. By the time S.J.D. commenced this action, B.J.M. had paid only $12.94 in child support.
¶6 For about half of 2006, B. J.M. was incarcerated or in residential treatment for problems related to illegal drug use. In November 2006, after being released from treatment, B.J.M. contacted I.J.C. to arrange a visit with K.P.M. At the visit, K.P.M. did not know who B.J.M. was at first, but after playing for an hour in the park, he warmed up to her. However, because of the sporadic nature of B.J.M. and KP.M.’s contacts, K.P.M. never bonded with B.J.M.
¶7 S.J.D., I. J.C.’s wife, filed a petition to adopt K.P.M. in March 2007. Two months later, she filed a petition to terminate B.J.M.’s parental rights in the same district court action as her petition for adoption. ¶8 At the hearing on the petition to terminate B.J.M.’s parental rights, the District Court found that B.J.M. provided an unsuitable environment for K.P.M. because her home was unkempt, she associated with known drug dealers and users, and she was involved with abusive partners and exposed K.P.M. to such abuse. The District Court further found S.J.D. was a constant in KP.M.’s life and is the only mother that K.P.M. has known. The District Court found any attempt to establish a relationship between B. J.M. and K.P.M. would not be in K.P.M.’s best interest.
¶9 Based on its findings of fact, the District Court concluded that clear and convincing evidence established B.J.M. abandoned K.P.M. and also that she failed to support him, financially and otherwise, when she was able to do so for a period of over one year. The District Court concluded B.J.M. was unfit and ordered her parental rights terminated.
STANDARD OF REVIEW
¶10 A district court’s findings are clearly erroneous if they are not supported by substantial evidence, if the district court misapprehended the evidence, or if we come away from our review with a definite and firm conviction that the district court made a mistake. Interstate Production Credit v. DeSaye, 250 Mont. 320, 323, *173 820 P.2d 1285, 1287 (1991). Because parental rights are a fundamental liberty interest, an order terminating these rights must be supported by clear and convincing evidence. In re Adoption of C.R.N., 1999 MT 92, ¶ 7, 294 Mont. 202, 979 P.2d 210. Clear and convincing evidence is not a mere preponderance of evidence nor is it unanswerable or conclusive evidence or evidence beyond a reasonable doubt. Clear and convincing evidence is a preponderance of evidence that is definite, clear, and convincing. In re G.M., 2008 MT 200, ¶ 23, 344 Mont. 87, 186 P.3d 229. The three part DeSaye test is used to determine if a finding of fact is clearly erroneous in a case where clear and convincing evidence is the standard of proof. In re G.M., ¶ 23.
¶11 Finally, we review the district court’s conclusions of law to determine whether those conclusions are correct. In re C.R.N., ¶ 7.
DISCUSSION
¶12 Relating to adoption, § 42-2-602, MCA, provides:
A child is not legally free for adoption until the parental rights of the birth parent or parents have been terminated by a court:
(1) as provided in this title;
(2) pursuant to Title 41, chapter 3; or
(3) of competent jurisdiction in another state or country.
¶13 Therefore, parental rights maybe terminated as provided in Title 42, MCA. The general provisions of the Montana Adoption Act (Title 42) set forth who may be adopted:
(1) A child is legally free for adoption if:
(a) the child does not have a living parent;
(b) the parental rights of the living parents of the child have been terminated according to the laws of this state or of another jurisdiction; or
(c) the living parents, guardian authorized by the court, or department or agency with custody of the child consent to the adoption.
(2) An adult maybe adopted as provided in 42-4-401 through 42-4-405.
(3) A stepchild may be adopted as provided in 42-4-301 through 42-4-304 and 42-4-309 through 42-4-312.
Section 42-1-105, MCA. At the time she filed her petition to adopt K.P.M., S.J.D. mistakenly alleged that B.J.M. would consent. When consent was not forthcoming, she filed the petition to terminate B.J.M.’s parental rights pursuant to Title 42, MCA. Section 42-4-302, MCA, provides:
*174 (1) A stepparent has standing to file a petition for adoption of a minor child of the stepparent’s spouse if:
(a) the spouse has legal and physical custody of the child and the child has been in the physical custody of the spouse and the stepparent during the 60 days preceding the filing of a petition for adoption;
(3) A petition for adoption by a stepparent may be joined with a petition for termination of parental rights.
¶14 Under § 42-4-302(l)(a), MCA, S. J.D. qualifies as a stepparent who has standing to file a petition for adoption of K.P.M. Statutes are not to be read in isolation, but as a whole. In construing statutes, this Court must give effect to all of their provisions if possible. Darby Spar, Ltd. v. Dept. of Revenue, 217 Mont. 376, 379, 705 P.2d 111, 113 (1985). Considering § 42-4-302, MCA, as a whole, it is only logical to conclude that S.J.D., as a custodial stepparent, has standing to adopt under subdivision (1), and may combine her petition to adopt with a petition for termination of parental rights under subdivision (3). Consequently, she has standing to petition for termination of parental rights.
¶15 Section 42-4-310, MCA, provides:
A stepparent who desires to adopt a stepchild shall obtain an order of termination of parental rights of the child's noncustodial parent prior to or contemporaneously with the petition to adopt. Any necessary consents must be filed with the petition for adoption. Notice of the hearing on the petition must be given, and the stepparent shall attend the hearing conducted by the court.
¶16 The most reasonable interpretation of § 42-4-310, MCA, is that
a stepparent who must obtain a termination of the parental rights of the child's noncustodial parent, and who may do so prior to or contemporaneously with her petition to adopt her stepchild, has standing to petition for the required termination. Otherwise, the stepparent would easily be stymied by an inability to petition for termination, thus frustrating legislative intent. Reading relevant statutory schemes in their entireties is what allows the Court to give true effect to the will of the Legislature. Dukes v. City of Missoula, 2005 MT 196, ¶ 14, 328 Mont. 155, 119 P.3d 61. Considering Title 42 as a whole, it is clear the Legislature intended a custodial stepparent to have standing to file a petition to terminate a noncustodial parent’s parental rights.
¶17 In compliance with § 42-4-310, MCA, S.J.D. sought and obtained the termination of B.J.M.’s parental rights. Thus, B.J.M.’s consent to *175 KP.M.’s adoption is no longer necessary. KP.M.’s father has consented to the adoption. K.P.M. is thus available for S.J.D. to adopt, which is the next step in the process and will be scheduled for consideration by the District Court, pending the outcome of this appeal.
¶18 Sua sponte, the dissent posits that S.J.D. has no standing to petition to terminate B. J.M.’s parental rights, asserting that only those included in the categories listed in § 42-2-603(2), MCA, have standing to file a petition to terminate parental rights. However, § 42-2-603(2), MCA, does not state that the only persons or entities that may file a petition to terminate parental rights are those that fall into one of the listed categories. Nor does it state that a stepparent lacks standing to file a petition to terminate a noncustodial parent’s rights.
¶19 If § 42-2-603, MCA, was interpreted as the dissent suggests, no one would have standing to petition to terminate B. J.M.’s parental rights. Neither DPHHS nor a child placing agency is involved in this case as I.J.C., the birth father, is caring for K.P.M. B.J.M. has not relinquished her parental rights to anyone, and there is no guardian. Under the dissent’s interpretation, even I.J.C. could not petition for termination as he is not listed in sub-section (2). The logical interpretation of § 42-2-603, MCA, is that it applies in those instances when a birth mother has chosen to relinquish her parental rights and consent to the adoption of her child, but that it does not deny standing to a stepparent.
¶20 Nowhere, in either party’s pleadings, in their proposed findings of fact and conclusions of law, in the evidence at the hearing, in the post-hearing briefing, in the District Court’s order, or in the briefing to this Court, is there any contest to the fact that S.J.D. has standing to petition to terminate B.J.M.’s parental rights and to adopt K.P.M. This is understandable. This Court has approved previous applications of Title 42 that are consistent with our interpretation today. E.g. In re Adoption of C.W.D., 2005 MT 145, 327 Mont. 301, 114 P.3d 214 (affirming the grant of the stepfather’s petition to terminate the natural father’s parental rights); See e.g. Matter of Adoption of J.B.T., 250 Mont. 205, 819 P.2d 178 (1991) (analyzing whether the stepfather carried his burden to justify terminating the natural father’s parental rights, pursuant to § 40-8-lll(l)(a)(v), MCA); Matter of Adoption of C.J.H., 246 Mont. 52, 803 P.2d 214 (1990) (holding the district court did not err in granting stepfather’s petition for adoption and terminating natural father’s rights); Matter of Adoption of D.J. V., 244 Mont. 209, 796 P.2d 1076 (1990) (affirming the district court’s termination of the natural father’s parental rights upon the *176 stepfather’s showing lack of support under § 40-8-lll(l)(a)(v), MCA); Matter of Adoption of R.M., 241 Mont. 111, 785 P.2d 709 (1990) (affirming the termination of the father’s parental rights because the stepfather showed by clear and convincing evidence the father was able to pay support and failed to do so); Kanvick v. Reilly, 233 Mont. 324, 326, 760 P.2d 743, 745 (1988) (noting “[i]n a separate adoption proceeding brought by K.R.’s new stepfather, [the natural fatherj’s parental rights were terminated”); Adoption of J.M.G., 226 Mont. 525, 736 P.2d 967 (1987) (holding the stepfather adduced substantial credible evidence to support the termination of the natural father’s parental rights). S.J.D., as a custodial stepparent and pursuant to §§ 42-4-302 and 42-4-310, MCA, has standing to petition to terminate B.J.M.’s parental rights.
¶21 Returning to the issues briefed by the parties, a district court may terminate a parent’s rights to a child if it determines by clear and convincing evidence that a parent is unfit. Section 42-2-607(2), MCA. Grounds for unfitness are, inter alia, that the parent willfully abandoned the child or that the parent was able to support her child and failed to do so for one year before the filing of a petition to adopt. Section 42-2-608(l)(b)-(c), MCA. Section 41-3-102(l)(a)(i), MCA, defines “abandonment” as “leaving a child under circumstances that make reasonable the belief that the parent does not intend to resume care of the child in the future.” Alternatively, abandonment can be:
willfully surrendering physical custody for a period of 6 months and during that period, not manifesting to the child and the person having physical custody of the child a firm intention to resume physical custody or to make permanent legal arrangements for the care of the child.
Section 41-3-102(l)(a)(ii), MCA.
¶22 B.J.M., citing Matter of Adoption of Doe, 277 Mont. 251, 921 P.2d 875 (1996), argues that the District Court erred in including the time she spent incarcerated when calculating the time period to establish abandonment. In Adoption of Doe, the hearing testimony clearly established that both parties understood the custody arrangement was temporary when the mother went to prison. The mother repeatedly and firmly refused to grant permanent custody and she made contacts with her children monthly while in prison. Adoption of Doe, 277 Mont. at 257-58, 921 P.2d at 879. Thus, we concluded that the district court’s finding of abandonment, based on its finding that the mother did not intend to resume caring for her children in the future, was not supported by clear and convincing evidence. Adoption of Doe, 277 *177 Mont. at 258, 921 P.2d at 879-80.
¶23 The circumstances of this case are readily distinguishable from Adoption of Doe. Unlike Adoption of Doe, there was no understanding between I.J.C. and B.J.M. that she would resume custody of K.P.M. in the future. I.J.C. may have known that the particular parenting arrangement was temporary at first, but “that it went downhill” after they started sharing custody. He then did not hear from B.J.M. for over a year.
¶24 Although Adoption of Doe did establish that involuntary separations due to incarceration do not necessarily rise to the level of abandonment in every case, the Court’s decision there hinged on the determination that even though she was in prison, the mother clearly intended to resume care of her children in the future. Adoption of Doe, 277 Mont. at 258, 921 P.2d at 879-80. Here, B.J.M. did not manifest the intention to resume custody, or even maintain contact with K.P.M. while she was incarcerated. Under the circumstances of this case, the District Court did not err in considering B.J.M.’s time in prison and residential drug treatment-during which she had no contact with her son-as evidence she abandoned K.P.M.
¶25 The District Court found that B.J.M. failed to make any contact with K.P.M. for fifteen months. This time exceeds the six month requirement for application of § 41-3-102(l)(a)(ii), MCA. Also, before and during her absence, B.J.M. failed to manifest any intention she would someday resume physical custody or make permanent legal arrangements for K.P.M. Section 41-3-102(l)(a)(ii), MCA.
¶26 In light of the record showing that during her periods of absence, B.J.M. was struggling with an abusive relationship, was using illegal drugs, and was running with known criminals, and because B.J.M. previously failed to follow through on her commitments to care for and visit with K.P.M., it was reasonable for the District Court to find that she did not intend to resume care of K.P.M. in the future, regardless of any understanding that the initial informal parenting plan was temporary. See § 41-3-102(l)(a)(i), MCA.
¶27 We conclude the District Court’s finding that B.J.M. abandoned her son, as defined by § 41-3-102(l)(a), MCA, and thus was an unfit parent, is supported by substantial evidence. It is not apparent the District Court misapprehended the effect of the evidence, and we are not left with the firm conviction that the court made a mistake. The District Court’s finding that B.J.M. was unfit is not clearly erroneous.
¶28 We defer to the District Court’s ability to judge the credibility of *178 witnesses and to resolve any conflicts in the evidence. In re Marriage of Pearson, 1998 MT 236, ¶ 56, 291 Mont. 101, 965 P.2d 268. Atrial court is in a better position than the appellate court to judge the credibility of testimony. Absent a clear preponderance of the evidence against the district court’s valuation, its findings of fact will not be disturbed on appeal when based on substantial though conflicting evidence. In re Marriage of Milesnick, 235 Mont. 88, 95, 765 P.2d 751, 755 (1988). Thus, because we have determined the District Court’s findings were not clearly erroneous, we base our analysis on the facts it found true.
¶29 S.J.D. initially filed her petition for adoption under the impression that she had B.J.M.’s consent to do so. As soon as S.J.D. knew B.J.M. would not consent, she followed the statutory mandate and filed her petition to terminate B.J.M.’s parental rights, pursuant to § 42-4-302(3), MCA, to accompany the petition for adoption in this same proceeding. Thus, her petition to terminate parental rights is proceeding contemporaneously with her petition for adoption, and she has complied with § 42-4-310, MCA. While the dissent would dismiss S.J.D.’s petition to adopt for failure to follow the correct statutory procedure, that matter was neither raised in the appellate briefs, nor was it an issue before the District Court in its consideration of the petition to terminate parental rights. This Court will not consider issues not raised or briefed. M. R. App. P. 12(1); See State v. Slade, 2008 MT 341, ¶ 23, 346 Mont. 271, 194 P.3d 677.
¶30 Lastly, B.J.M. argues that the District Court erred when it found B.J.M. failed to support K.P.M. when she was able to do so for one year prior to the filing of the petition for adoption. See § 42-2-608(l)(c), MCA. Because we affirm the District Court’s finding of unfitness based on abandonment, we need not address B.J.M.’s lack of support argument.
CONCLUSION
¶31 We conclude the District Court’s finding that B.J.M. was an unfit parent, pursuant to § 42-2-608(l)(b), MCA, is not clearly erroneous. The District Court’s judgment that B.J.M.’s parental rights are terminated and that K.P.M. is available for adoption is affirmed.
JUSTICES LEAPHART, MORRIS and RICE concur.