No. 86-322

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

IN THE MATTER OF THE ADOPTION OF

K.L.J.K., A minor.

_____

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Glenn R. Kanvick, pro se, Billings, Montana

For Respondent:

Dunaway, O'Conner & Moe; William J. O'Connor, II,
Billings, Montana

_____

Submitted on Briefs: Oct. 30, 1986

Decided: December 29, 1986

Filed: DEC 29 1986

_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

The natural father of K.L.J.K. appeals the May 2, 1986, order of the Thirteenth Judicial District Court terminating his parental rights and decreeing the adoption of K.L.J.K. by her natural mother's new husband. We affirm.

The marriage of K.L.J.K.'s natural parents was dissolved February 14, 1983. The mother was awarded custody of K.L.J.K. The father, G.R.K., was ordered to pay $100 a month in child support until finding employment or June 1, 1983, whichever occured first. Thereafter, he was to pay $175 per month.

The father, a frequently unemployed construction worker, has been remiss regarding his child support obligation since the beginning. He has been held in contempt of court and incarcerated for his failure to make the support payments. Efforts by G.R.K. to have his support obligation reduced have not been successful. In October of 1984, he was found to owe $3,336.58, in child support. No support payments have been forthcoming since May of 1984.

In October of 1985, the natural mother petitioned the court for the termination of G.R.K.'s parental rights. Her new husband then petitioned the court to adopt K.L.J.K. G.R.K.'s request for a court-appointed attorney of his choosing was denied. G.R.K. has therefore appeared pro se. Following several hearings on the petitions and the filing of numerous briefs and memoranda by the parties, the trial judge held that because K.L.J.K.'s natural father had failed to make child support payments for at least one year prior to the filing of the petitions, despite his ability to do so, his daughter could be adopted without his permission pursuant to § 40-8-111(1)(a)(v), MCA. The trial judge terminated

2

G.R.K.'s parental rights, then found that adoption by her natural mother's husband would be in K.L.J.K.'s best interests and granted the petition to adopt.

Numerous issues are raised on appeal.

1. Is G.R.K.'s constitutional right to equal protection abridged by the requirement that he make child support payments despite being denied visitation rights with his daughter?

2. Did the District Court err by not giving credit for in-kind child support payments?

3. Did the District Court fail to provide G.R.K. with a fundamentally fair hearing by:

a. refusing his request for court-appointed counsel;

b. failing to provide adequate notice of the hearings in this matter; and

c. making a ruling based on improper findings?

4. Is § 40-8-111(1((a)(v), MCA, unconstitutionally vague?

We take this opportunity to reaffirm our decision in State, ex rel. Dewyea v. Knapp (Mont. 1984), 674 P.2d 1104, 41 St.Rep. 143, that one's obligation to provide child support is in no way connected with one's right to visitation. Section 40-5-124, MCA, states in part:

> . . . The determination or enforcement of a duty of support owed to one obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by a court.

Because the responsibility to provide child support is not interchangeable with the right to visit one's child, there can be no equal protection problem in requiring that child support obligations be met despite the denial of visitation rights.

3

We also reaffirm our decision in In the Matter of the Adoption of S.L.R. (1982), 196 Mont. 411, 640 P.2d 886, that the providing of articles of clothing or other in-kind payments does not satisfy a parent's obligation to contribute to the financial suppport of his or her child.

Next, there is no constitutional or statutory requirement that an indigent party be provided with court-appointed counsel in a civil proceeding. The Court has reviewed the cases cited by G.R.K. in support of his request for court-appointed counsel and finds that each involves a situation where the State is seeking to terminate parental rights pursuant to criminal statutes. They are not civil matters. See Lassiter v. Dept. of Social Services (1981), 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640.

The fundamental requirements for due process are "notice and opportunity for hearing appropriate to the nature of the case." Mullane v. Central Hanover Bank & Trust Co. (1950), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865. G.R.K. received adequate notice of each hearing held in this matter, appeared at each hearing and presented evidence and testimony in support of his position. We find no violation of G.R.K.'s right to due process of the laws.

The remaining issues raised by appellant require close scrutiny by this Court. G.R.K. contends § 40-8-111(1)(a)(v), MCA, is unconstitutional because of its vagueness. Respondent contends that this issue was not raised at the lower level. Therefore, we should not consider it on appeal. Respondent has apparently disregarded a memorandum filed by G.R.K. in the lower court the morning of May 5, 1986, wherein the precise issue was raised and discussed. However, the Attorney General's office has never been notified of the constitutional challenge to the statute as required by

4

Rule 38, M.R.App.Civ.P. Because appellant failed to timely raise the issue in the lower court and because the Attorney General's office has not been given an opportunity to appear in this matter, we refuse to decide the constitutionality of § 40-8-111(1)(a)(v), MCA.

Nevertheless, if the statute is in fact vague, objections other than those of a constitutional nature may be made. Courts must refuse to enforce legislation which is deemed too uncertain to be applied. However, Courts are granted the liberty of construing uncertain statutes in a reasonable manner, keeping in mind the intent of the legislature. Nice v. State (1973), 161 Mont. 448, 507 P.2d 527. See also McClanathan v. Smith (1980), 186 Mont. 56, 606 P.2d 507. We take that liberty here.

Section 40-8-111(1)(a)(v), MCA, states:

Consent required for adoption. (1) An adoption of a child may be decreed when there have been filed written consents to adoption executed by:

(a) both parents, if living, or the surviving parent of a child, provided that consent is not required from a father or mother:

. . .

(v) if it is proven to the satisfaction of the court that the father or mother, if able, has not contributed to the support of the child during a period of 1 year before the filing of a petition for adoption. (Emphasis supplied.)

G.R.K. objects to the term "support", contending that it is vague. We also have problems with the term "able".

We have previously construed "support" to be "financial support that a parent owes a child". In the Matter of the Adoption of Smigaj (1977), 171 Mont. 537, 560 P.2d 141. Later, in In the Matter of the Adoption of R.A.S. (Mont. 1984), 679 P.2d 220, 41 St.Rep. 451, we held that even if a parent had made a child support payment less than twelve

5

months prior to the filing of an adoption petition, the payment would not trigger the consent requirement if it was actually applied to child support due and owing for more than twelve months prior to the filing of the petition.

These decisions are consistent with the importance of child support. They give notice to parents that they must provide more than token support once or twice a year or risk having their parental rights terminated. However, because of this definition of "support", we must be especially careful in determining whether a parent is "able" to contribute to the support of the child. Otherwise, parents who forego all but the necessities of life in order to make partial child support payments might be unfairly penalized.

Caution must be exercised when determining who is "able" to contribute to the support of their child. We recently affirmed a lower court's determination that the "statutory ability to pay child support cannot be determined solely by the natural parent's income." The ability to contribute must also take into account the parent's ability and desire to earn an income. In the Matter of The Adoption of B.L.P. (Mont. 1986), ___ P.2d ___, 43 St.Rep. 2116. In that case, the father left a stable job for a potentially more lucrative position. The second job failed to materialize. The lower court found, and we agreed, that the father's financial priorities did not include providing child support, despite his ability to do so.

Conversely, when determining whether a parent is "able" to contribute support to the child, we must also examine the parent's willingness to work and willingness to meet only his basic needs before providing for his child. Thus, in determining whether a parent is "able" to contribute to the

support of the child, the trial judge must examine several factors, including:

1) The parent's ability to earn an income;

2) The parent's willingness to earn an income and support his child;

3) The availability of jobs;

4) The parent's use of his funds to provide himself only with the bare necessities of life prior to providing support for his child.

Applying the above factors to the case at bar, we find no error in the lower court's determination that G.R.K. was able to contribute to the support of his child. Exhibits entered into evidence by G.R.K. indicate that his average monthly income for the 12 months immediately prior to the filing of the petition was $750. The same exhibit shows his monthly expenses for food, utilities and rent ranged from $455 to $530 a month. Thus, there existed, on the average, between $220 and $295 a month from which some child support could have been paid. G.R.K. voluntarily chose not to make child support payments with this extra money. He therefore must face the consequences.

There is sufficient evidence to support the decision of the trial judge. It is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

7

Justices