No. 90-267

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

IN THE MATTER OF THE ADOPTION OF
C.J.H., W.L.H., T.A.H., Minors

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Donald L. Harris; Crowley, Haughey, Hanson, Toole
& Dietrich; Billings, Montana

For Respondent:

Marvin R. Ventrell; Gannett & Ventrell; Billings,
Montana (R.W.K., Petitioner)

Submitted on Briefs: October 19, 1990

Decided: December 13, 1990

FILED
'90 DEC 13 AM 10 45
ED SMITH, CLERK
MONTANA SUPREME COURT
Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This appeal involves an adoption proceeding held in the Thirteenth Judicial District, Yellowstone County. Robert Kimpton, the stepfather of three minor children, filed a petition for their adoption. The childrens' natural father, Warren Hoffman, did not consent. Following trial the Court entered its decree of adoption terminating the natural father's parental rights. He appeals. We affirm.

The issues before us are:

1. Did the District Court act within its discretion when it granted the Petition for Adoption and terminated the natural father's rights?

2. Is § 40-8-111(1)(a)(v), MCA, constitutional under the United States Constitution and the Constitution of the State of Montana?

Warren Hoffman (Warren) and Chris Anderson (Chris) were married February 15, 1975. Three children were born of the marriage.

Warren and Chris were divorced in 1986 and were awarded joint custody by decree. Warren was ordered to pay a total of $375 per month in child support and carry medical insurance for the children.

Later that year, Chris married Robert Kimpton (Robert), and the couple have resided together with the three children since that time. In 1989, Robert filed a Petition for Adoption of the children, alleging that Warren's consent was not required because

he failed to support the children during the one year preceding the filing of the Petition, and that the adoption would be in the best interests of the children. Chris consented to the adoption; the Department of Family Services approved the adoption; and Warren objected to the adoption.

Prior to granting the adoption and terminating Warren's parental rights, the District Court made the following pertinent findings of fact: In December, 1987, Warren paid $200 in child support rather than the required $375 per month. He had failed to maintain medical insurance for the children at least since December of 1987. In 1988, Warren paid no child support. He maintained that he obtained a $100 money order and gave it to Chris, but that she gave it back. Warren claimed that the $100 was the best he could do and Chris maintained it was not enough. The Petition for Adoption was filed January 3, 1989. Warren furnished payments to Chris since the beginning of the year 1989 as follows: $40 in February, $40 in March, $100 in May and an additional $100 in May of 1989. Warren had a gross income during 1988 of at least $10,000.

The District Court also found that there is not a good relationship between Warren and the three children and continued contact between Warren and the children seriously endangered the childrens' physical and emotional welfare. It found that a good relationship did exist between Robert and the children and that it would be in the best interests of the children if they were adopted by Robert.

The court concluded that the parental rights of Warren may be terminated without his consent. It further determined that it is in the best interests of the children that they be adopted by their stepfather, Robert. From that decision, Warren appeals.

I

Did the District Court act within its discretion when it granted the Petition for Adoption and terminated the natural father's rights?

Warren contends that his consent was required since he paid as much child support as he was financially able. He maintains that his offer of the $100 money order and a coat he purchased for one of the children was sufficient to require that he must still give his consent to the adoption.

Robert and Chris maintain that Warren failed to provide support for his children during the one year period preceding the filing of the adoption petition. They contend that Warren refused to hand over the $100 money order after Chris made it clear to him that it in no way satisfied his child support obligation. They further maintain that payments in kind, (ie. the coat), do not apply as child support. Rather, they maintain that child support means financial support.

Section 40-8-111, MCA, defines the consent required for adoption.

> (1) An adoption of a child may be decreed when there have been filed written consents to adoption executed by:
>
> (a) both parents, if living, or the surviving parent of a child, provided that consent is not required from a

4

father or mother:

. . .

(v)   if it is proven to the satisfaction of the court that the father or mother, if able, has not contributed to the support of the child during a period of 1 year before the filing of a petition for adoption; . . .

Thus, a father's rights may be terminated, and an adoption decreed without his consent upon a showing of nonsupport under the above statute.   It is the public policy in Montana that the statutes concerning the termination of parental rights should not be interpreted in favor of those who shun the burden of parental obligations.  In the Matter of the Adoption of D.J.V. (Mont. 1990), 796 P.2d 1076, 1078, 47 St.Rep. 1522, 1524.   The District Court found Warren failed in his child support obligation, and therefore his consent was not needed under § 40-8-111(1)(a)(v), MCA.

In determining whether child support was paid during the one year period immediately preceding the filing of the petition for adoption, this Court has stated that any payment of support must first be applied to satisfy the earliest arrearage before it is applied to the support owed during the year before the filing of the Petition for Adoption.   Warren maintains that the payments totalling $180 made in 1989 exceeded arrearages accrued prior to the filing of the petition for adoption.   Chris and Robert maintain that payments made after the filing may not be applied to the pre-adoption year.   We agree.   Otherwise, any parent delinquent with child support payments could wait until after the filing of the petition for adoption to prevent the adoption, even when contrary to the best interests of the children.   The payments made in 1989

5

by Warren were de minimus at best, considering the child support ordered was $375 per month and no medical insurance was provided. We hold that the District Court acted within its discretion when it granted the Petition for Adoption and terminated the natural father's rights.

II

Is § 40-8-111(1)(a)(v), MCA, constitutional under the United States Constitution and the Constitution of the State of Montana?

Warren maintains that § 40-8-111(1)(a)(v), MCA, is unconstitutional because a liberty interest has been taken away without the existence of a compelling state interest. However, we note that Warren has not complied with Rule 38, M.R.App.P., which states:

> It shall be the duty of counsel who challenges the constitutionality of any act of the Montana legislature in any suit or proceeding in the supreme court to which the state of Montana, or any agency thereof, or any officer or employee thereof, as such officer or employee, is not a party, <u>upon the filing of the record to give</u> **immediate** <u>notice in writing</u> to the court of the existence of said question, specifying the section of the code or the chapter of the session law to be construed. The clerk shall thereupon certify such fact to the attorney general of the state of Montana (Emphasis added).

Warren filed notice of appeal on May 7, 1990. The record was filed on May 25, 1990. Warren did not file his notice of constitutional challenge until June 13, 1990, twenty days later. A delay of twenty days does not constitute "immediate" notice as prescribed by Rule 38, M.R.App.P. Warren offers no explanation for his delay in filing notice of constitutional challenge.

What exactly "immediate" means under Rule 38 has not been

6

defined. However, this Court has held that a delay of 3 days was sufficiently "immediate" to file an affidavit of disqualification of a judge when the reason for the delay was reasonable. (Plaintiff resided in Lake County but had to travel to Missoula County to sign an affidavit of disqualification and the Thanksgiving holiday was the day after he received notice.) See Wheeler v. Moe (1973), 163 Mont. 154, 515 P.2d 679.

"Immediate" is defined in Black's Law Dictionary, 6th ed. (1990) as follows:

> Present; at once; without delay; not deferred by any interval of time. . . . A reasonable time in view of particular facts and circumstances of case under consideration. . . .

We conclude that Warren has presented no facts to explain the delay of twenty days in filing his notice of constitutional challenge. We therefore conclude that he has failed to comply with the requirements of Rule 38, M.R.App.P. We will not address the question of the constitutional challenge.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

7

Justice R. C. McDonough dissenting.

A parent has a "fundamental liberty interest" in continuing his parental relationship with his children. See Santosky v. Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-5, 71 L.Ed.2d 599, 606. A decree terminating the parental relationship must be supported by clear and convincing evidence. See Matter of Adoption of R.M., S.P.M. and R.M. (1990), 241 Mont. 111, 118, 785 P.2d 709, 713.

Strict compliance with the statute is required. Matter of adoption of B.L.P. (1986), 224 Mont. 182, 184, 728 P.2d 803, 804. The petitioner by statute must prove by clear and convincing evidence the failure to support for the one year while being able to do so. Here the record fails to show by clear and convincing evidence the ability of the appellant to pay the support; and the District Court did not make any finding as to the appellant's ability to pay.

I would reverse and dismiss the petition.

_____
                Justice

Justice Wm. E. Hunt, Sr. joins in the foregoing dissent.

_____
                Justice