No.  91-061

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

FILED

AUG 27 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

IN THE MATTER OF THE ADOPTION OF
J.B.T. and W.D.T.,   Minors.


APPEAL FROM:   District Court of the Fifteenth Judicial District,
               In and for the County of Daniels,
               The Honorable M. James Sorte, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

               Loren J. O'Toole, II; O'Toole & O'Toole, Plentywood,
               Montana

        For Respondent:

               Francis J. McCarvel, Glasgow, Montana


                              Submitted on Briefs:   May 16, 1991

                                        Decided:   August 27, 1991

Filed:


                    _____
                     Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

The natural mother and stepfather appeal from an order of the District Court, Fifteenth Judicial District, Daniels County, denying their petition to terminate the natural father's parental rights. We affirm.

The parties raise the following issue:

Whether the District Court erred in finding that the evidence was not clear and convincing that the natural father was able to contribute to the child support but did not do so for a period of one year prior to the filing of the petition for adoption pursuant to § 40-8-111(1)(a)(v), MCA.

Appellant, Teresa Ann (Tryan) Jagiello, and respondent, Bruce Lee Tryan, were married on February 27, 1982, in Daniels County. Two children, J.B.T. and W.D.T., were born as a result of the marriage. The marriage was dissolved on October 14, 1987. The wife became the custodial parent of the minor children, subject to the natural father's visitation rights.

The natural father agreed to pay $100 per month per child in child support and he also agreed to pay all debts contracted under the marriage. The natural father fell behind in payments, and as a result, the District Court found the natural father in contempt for failure to pay child support and house payments. On October 19, 1988, the court issued an order which awarded the mother $1226 in back house payments and attorney's fees and increased the natural father's child support payments of $100 per

2

month per child to $300 per month to make up the arrearage. The child support records of the Clerk of the District Court show no child support payments from July 1989 through August 1990.

During the same period, the natural father was unemployed for four months. He attempted to find work during this period and actively contacted a number of construction companies for employment. From the end of September 1989 through mid-February 1990, the natural father was only able to work as a part-time bartender earning $120 a week in Flaxville. From mid-February 1990 to August 1990, the natural father worked numerous jobs in the Scobey area with a construction company. He was unemployed in April of that year and in May, June, and July he worked as a carpenter.

From March to August 1990, the mother garnished the natural father's wages in the amount of $597. She applied the proceeds toward house payments and attorney fees. None of the money was used for child support.

In early August 1990, the stepfather and mother petitioned the District Court for adoption of the children. The petition alleged that the natural father's consent was not required because he failed to contribute to the support the children for a period of one year, even though he was able to do so. The District Court denied the petition and found there was not clear and convincing evidence that the natural father was able to contribute to the

child support but did not do so for over a year. It is from this decision that the mother and stepfather appeal.

Generally, in order for the District Court to decree an adoption of a child there must be written consents filed by both parents, if living. Section 40-8-111(1)(a), MCA. The statute provides that consent is not required by either parent if:

> [I]t is proven to the satisfaction of the court that the father or mother, if able, has not contributed to the support of the child during a period of 1 year before the filing of the petition for adoption . . . .

Section 40-8-111(1)(a)(v), MCA.

For the court to find that a parent's consent is not necessary to terminate its parental rights, the burden of proof requires that there must be clear and convincing evidence that the parent has not contributed to the support of the child for one year and was able to do so. In re Adoption of S.E. (1988), 232 Mont. 31, 35, 755 P.2d 27, 29. Hence, the statute requires a two-tier analysis before parental rights can be terminated. Matter of Adoption of R.A.S. (1984), 208 Mont. 438, 442, 679 P.2d 220, 223. First, the court must decide if the nonconsenting parent failed to contribute to the support of the child during a period of one year prior to the filing of the petition. The court must then determine if the nonconsenting parent had the ability to pay child support. Matter of the Adoption of S.L.R. (1982), 196 Mont. 411, 413-414, 640 P.2d 886, 887. The burden of proof falls upon the petitioner to show that the two-prong test is met. Adoption of R.A.S., 679 P.2d at

4

223; Adoption of S.L.R., 640 P.2d at 886-87. Because the natural parent can forever lose parental rights, this Court requires strict compliance with the statute. In re Adoption of Biery (1974), 164 Mont. 353, 359, 522 P.2d 1377, 1380.

In a previous case, we interpreted "support" to mean the "'financial support that a parent owes a child.'" Matter of Adoption of K.L.J.K. (1986), 224 Mont. 418, 422-23, 730 P.2d 1135, 1138. This definition is designed to prevent parents from giving token child support payments once or twice a year in order to avoid having their parental rights terminated. Adoption of K.L.J.K., 730 P.2d at 1138. We are much more diligent in deciding whether a parent is "able" to contribute to child support. Adoption of K.L.J.K., 730 P.2d at 1138. Therefore, when determining whether a parent is "able" to contribute we examine four factors.

1) The parent's ability to earn an income;

2) The parent's willingness to earn an income and support his child;

3) The availability of jobs;

4) The parent's use of his funds to provide for himself only with the bare necessities of life prior to providing support for his child.

Adoption of K.L.J.K., 730 P.2d at 1139.

In this case, the natural father's ability to earn income was limited. From July 1989 through August 1990, he was unemployed for four months. He worked approximately four months as a part-time bartender earning less than $500 a month. While unemployed, the

5

natural father demonstrated his willingness to seek employment by actively contacting numerous construction companies but was temporarily unsuccessful. He sought unemployment compensation but was refused benefits. The natural father testified he had difficulty making rental payments and paying bills while working because his wages were being garnished by his wife. The District Court concluded that the wife should have applied the payments to child support.

We hold that the District Court did not err in finding that the evidence was not clear and convincing that the natural father was able to contribute to child support but did not to do so for a period of one year.

We affirm.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

6

August 27, 1991

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Loren J. O'Toole II
O'TOOLE & O'TOOLE
209 North Maint
P.O. Box 529
Plentywood, Mt  59254

Francis J. McCarvel
Attorney at Law
P.O. Box 388
Glasgow, MT  59230

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy