

DA 08-0168

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 31

IN RE THE ADOPTION OF:
K.P.M., Minor Child,

S.J.D.,

      Petitioner and Appellee,

   and

B.J.M., (n/k/a B.J.S.),

      Respondent and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DA-07-7
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Nicholas P. Anderson, Anderson & Anderson, Missoula, Montana

      For Appellee:

          Terrance L. Wolfe, Sol & Wolfe Law Firm, Missoula, Montana

                    Submitted on Briefs:  December 30, 2008

                             Decided:  February 10, 2009

Filed:

_____
                        Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 S.J.D., who is K.P.M.'s stepmother, petitioned the Fourth Judicial District Court, Missoula County, for termination of the parental rights of K.P.M.'s biological mother, B.J.M., and to adopt K.P.M. The District Court ordered B.J.M.'s parental rights terminated. B.J.M. appeals.

¶2 The sole issue B.J.M. raises on appeal is whether the District Court erred in terminating B.J.M.'s parental rights because B.J.M. was unfit as provided in § 42-2-608(b), MCA.

## BACKGROUND

¶3 In December 2003, B.J.M. gave birth to K.P.M. Until a paternity test was conducted in summer 2004, it was unclear who K.P.M.'s father was. When it was confirmed that I.J.C. was K.P.M.'s father, he and B.J.M. maintained an informal parenting plan for about a year where they shared custody of K.P.M. During this time, B.J.M. was living a transient lifestyle and was unreliable in keeping her commitments to or maintaining contact with I.J.C. and K.P.M.

¶4 In March 2005, B.J.M. transferred primary parenting responsibility to I.J.C. A month later, I.J.C. filed a petition in the District Court to determine that he was K.P.M.'s father and to establish a parenting plan. The District Court granted the petition, determined that I.J.C. was K.P.M.'s father, and established a parenting plan, making I.J.C. K.P.M.'s primary parent and giving B.J.M. regularly scheduled weekly and holiday visitation. However, B.J.M. did not regularly visit with K.P.M. and had no contact with either K.P.M. or I.J.C. for substantial

2

periods of time. Between July 2005 and November 2006, B.J.M. made no contact with I.J.C. or K.P.M.

¶5     The parenting plan ordered B.J.M. to pay $103 per month in child support to begin several months later, so she could attempt to achieve greater financial stability. By the time S.J.D. commenced this action, B.J.M. had paid only $12.94 in child support.

¶6     For about half of 2006, B.J.M. was incarcerated or in residential treatment for problems related to illegal drug use. In November 2006, after being released from treatment, B.J.M. contacted I.J.C. to arrange a visit with K.P.M. At the visit, K.P.M. did not know who B.J.M. was at first, but after playing for an hour in the park, he warmed up to her. However, because of the sporadic nature of B.J.M. and K.P.M.'s contacts, K.P.M. never bonded with B.J.M.

¶7     S.J.D., I.J.C.'s wife, filed a petition to adopt K.P.M. in March 2007. Two months later, she filed a petition to terminate B.J.M.'s parental rights in the same district court action as her petition for adoption.

¶8     At the hearing on the petition to terminate B.J.M.'s parental rights, the District Court found that B.J.M. provided an unsuitable environment for K.P.M. because her home was unkempt, she associated with known drug dealers and users, and she was involved with abusive partners and exposed K.P.M. to such abuse. The District Court further found S.J.D. was a constant in K.P.M.'s life and is the only mother that K.P.M. has known. The District Court found any attempt to establish a relationship between B.J.M. and K.P.M. would not be in K.P.M.'s best interest.

3

¶9      Based on its findings of fact, the District Court concluded that clear and convincing evidence established B.J.M. abandoned K.P.M. and also that she failed to support him, financially and otherwise, when she was able to do so for a period of over one year. The District Court concluded B.J.M. was unfit and ordered her parental rights terminated.

## STANDARD OF REVIEW

¶10     A district court's findings are clearly erroneous if they are not supported by substantial evidence, if the district court misapprehended the evidence, or if we come away from our review with a definite and firm conviction that the district court made a mistake. *Interstate Production Credit v. DeSaye*, 250 Mont. 320, 323, 820 P.2d 1285, 1287 (1991). Because parental rights are a fundamental liberty interest, an order terminating these rights must be supported by clear and convincing evidence. *In re Adoption of C.R.N.*, 1999 MT 92, ¶ 7, 294 Mont. 202, 979 P.2d 210. Clear and convincing evidence is not a mere preponderance of evidence nor is it unanswerable or conclusive evidence or evidence beyond a reasonable doubt. Clear and convincing evidence is a preponderance of evidence that is definite, clear, and convincing. *In re G.M.*, 2008 MT 200, ¶ 23, 344 Mont. 87, 186 P.3d 229. The three part *DeSaye* test is used to determine if a finding of fact is clearly erroneous in a case where clear and convincing evidence is the standard of proof. *In re G.M.*, ¶ 23.

¶11     Finally, we review the district court's conclusions of law to determine whether those conclusions are correct. *In re C.R.N.*, ¶ 7.

## DISCUSSION

¶12     Relating to adoption, § 42-2-602, MCA, provides:

4

A child is not legally free for adoption until the parental rights of the birth parent or parents have been terminated by a court:

(1) as provided in this title;
(2) pursuant to Title 41, chapter 3; or
(3) of competent jurisdiction in another state or country.

¶13 Therefore, parental rights may be terminated as provided in Title 42, MCA. The general provisions of the Montana Adoption Act (Title 42) set forth who may be adopted:

(1) A child is legally free for adoption if:
　　　(a)  the child does not have a living parent;
　　　(b) the parental rights of the living parents of the child have been terminated according to the laws of this state or of another jurisdiction; or
　　　(c) the living parents, guardian authorized by the court, or department or agency with custody of the child consent to the adoption.

(2)  An adult may be adopted as provided in 42-4-401 through 42-4-405.

(3)  A stepchild may be adopted as provided in 42-4-301 through 42-4-304 and 42-4-309 through 42-4-312.

Section 42-1-105, MCA. At the time she filed her petition to adopt K.P.M., S.J.D. mistakenly alleged that B.J.M. would consent. When consent was not forthcoming, she filed the petition to terminate B.J.M.'s parental rights pursuant to Title 42, MCA. Section 42-4-302, MCA, provides:

(1) A stepparent has standing to file a petition for adoption of a minor child of the stepparent's spouse if:
　　　(a)  the spouse has legal and physical custody of the child and the child has been in the physical custody of the spouse and the stepparent during the 60 days preceding the filing of a petition for adoption;

.    .    .

5

(3) A petition for adoption by a stepparent may be joined with a petition for termination of parental rights.

¶14 Under § 42-4-302(1)(a), MCA, S.J.D. qualifies as a stepparent who has standing to file a petition for adoption of K.P.M. Statutes are not to be read in isolation, but as a whole. In construing statutes, this Court must give effect to all of their provisions if possible. *Darby Spar, Ltd. v. Dept. of Revenue*, 217 Mont. 376, 379, 705 P.2d 111, 113 (1985). Considering § 42-4-302, MCA, as a whole, it is only logical to conclude that S.J.D., as a custodial stepparent, has standing to adopt under subdivision (1), and may combine her petition to adopt with a petition for termination of parental rights under subdivision (3). Consequently, she has standing to petition for termination of parental rights.

¶15 Section 42-4-310, MCA, provides:

A stepparent who desires to adopt a stepchild shall obtain an order of termination of parental rights of the child's noncustodial parent prior to or contemporaneously with the petition to adopt. Any necessary consents must be filed with the petition for adoption. Notice of the hearing on the petition must be given, and the stepparent shall attend the hearing conducted by the court.

¶16 The most reasonable interpretation of § 42-4-310, MCA, is that a stepparent who must obtain a termination of the parental rights of the child's noncustodial parent, and who may do so prior to or contemporaneously with her petition to adopt her stepchild, has standing to petition for the required termination. Otherwise, the stepparent would easily be stymied by an inability to petition for termination, thus frustrating legislative intent. Reading relevant statutory schemes in their entireties is what allows the Court to give true effect to the will of the Legislature. *Dukes v. City of Missoula*, 2005 MT 196, ¶ 14, 328 Mont. 155, 119 P.3d 61.

6

Considering Title 42 as a whole, it is clear the Legislature intended a custodial stepparent to have standing to file a petition to terminate a noncustodial parent's parental rights.

¶17    In compliance with § 42-4-310, MCA, S.J.D. sought and obtained the termination of B.J.M.'s parental rights.  Thus, B.J.M.'s consent to K.P.M.'s adoption is no longer necessary.  K.P.M.'s father has consented to the adoption.  K.P.M. is thus available for S.J.D. to adopt, which is the next step in the process and will be scheduled for consideration by the District Court, pending the outcome of this appeal.

¶18    *Sua sponte*, the dissent posits that S.J.D. has no standing to petition to terminate B.J.M.'s parental rights, asserting that only those included in the categories listed in § 42-2-603(2), MCA, have standing to file a petition to terminate parental rights.  However, § 42-2-603(2), MCA, does not state that the only persons or entities that may file a petition to terminate parental rights are those that fall into one of the listed categories.  Nor does it state that a stepparent lacks standing to file a petition to terminate a noncustodial parent's rights.

¶19    If § 42-2-603, MCA, was interpreted as the dissent suggests, no one would have standing to petition to terminate B.J.M.'s parental rights.  Neither DPHHS nor a child placing agency is involved in this case as I.J.C., the birth father, is caring for K.P.M.  B.J.M. has not relinquished her parental rights to anyone, and there is no guardian.  Under the dissent's interpretation, even I.J.C. could not petition for termination as he is not listed in sub-section (2).  The logical interpretation of § 42-2-603, MCA, is that it applies in those instances when a birth mother has chosen to relinquish her parental rights and consent to the adoption of her child, but that it does not deny standing to a stepparent.

7

¶20    Nowhere, in either party's pleadings, in their proposed findings of fact and conclusions of law, in the evidence at the hearing, in the post-hearing briefing, in the District Court's order, or in the briefing to this Court, is there any contest to the fact that S.J.D. has standing to petition to terminate B.J.M.'s parental rights and to adopt K.P.M. This is understandable. This Court has approved previous applications of Title 42 that are consistent with our interpretation today. *E.g. In re Adoption of C.W.D.*, 2005 MT 145, 327 Mont. 301, 114 P.3d 214 (affirming the grant of the stepfather's petition to terminate the natural father's parental rights); *See e.g. Matter of Adoption of J.B.T.*, 250 Mont. 205, 819 P.2d 178 (1991) (analyzing whether the stepfather carried his burden to justify terminating the natural father's parental rights, pursuant to § 40-8-111(1)(a)(v), MCA); *Matter of Adoption of C.J.H.*, 246 Mont. 52, 803 P.2d 214 (1990) (holding the district court did not err in granting stepfather's petition for adoption and terminating natural father's rights); *Matter of Adoption of D.J.V.*, 244 Mont. 209, 796 P.2d 1076 (1990) (affirming the district court's termination of the natural father's parental rights upon the stepfather's showing lack of support under § 40-8-222(1)(a)(v), MCA); *Matter of Adoption of R.M.*, 241 Mont. 111, 785 P.2d 709 (1990) (affirming the termination of the father's parental rights because the stepfather showed by clear and convincing evidence the father was able to pay support and failed to do so); *Kanvick v. Reilly*, 233 Mont. 324, 326, 760 P.2d 743, 745 (1988) (noting "[i]n a separate adoption proceeding brought by K.R.'s new stepfather, [the natural father]'s parental rights were terminated"); *Adoption of J.M.G.*, 226 Mont. 525, 736 P.2d 967 (1987) (holding the stepfather adduced substantial credible evidence to support the termination of the natural father's parental rights). S.J.D., as a custodial

8

stepparent and pursuant to §§ 42-4-302 and 42-4-310, MCA, has standing to petition to terminate B.J.M.'s parental rights.

¶21    Returning to the issues briefed by the parties, a district court may terminate a parent's rights to a child if it determines by clear and convincing evidence that a parent is unfit. Section 42-2-607(2), MCA.  Grounds for unfitness are, *inter alia*, that the parent willfully abandoned the child or that the parent was able to support her child and failed to do so for one year before the filing of a petition to adopt.  Section 42-2-608(1)(b)-(c), MCA.  Section 41-3-102(1)(a)(i), MCA, defines "abandonment" as "leaving a child under circumstances that make reasonable the belief that the parent does not intend to resume care of the child in the future."  Alternatively, abandonment can be:

> willfully surrendering physical custody for a period of 6 months and during that period, not manifesting to the child and the person having physical custody of the child a firm intention to resume physical custody or to make permanent legal arrangements for the care of the child.

Section 41-3-102(1)(a)(ii), MCA.

¶22    B.J.M., citing *Matter of Adoption of Doe*, 277 Mont. 251, 921 P.2d 875 (1996), argues that the District Court erred in including the time she spent incarcerated when calculating the time period to establish abandonment.  In *Adoption of Doe*, the hearing testimony clearly established that both parties understood the custody arrangement was temporary when the mother went to prison.  The mother repeatedly and firmly refused to grant permanent custody and she made contacts with her children monthly while in prison.  *Adoption of Doe*, 277 Mont. at 257-58, 921 P.2d at 879.  Thus, we concluded that the district court's finding of

9

abandonment, based on its finding that the mother did not intend to resume caring for her children in the future, was not supported by clear and convincing evidence. *Adoption of Doe*, 277 Mont. at 258, 921 P.2d at 879-80.

¶23 The circumstances of this case are readily distinguishable from *Adoption of Doe*. Unlike *Adoption of Doe*, there was no understanding between I.J.C. and B.J.M. that she would resume custody of K.P.M. in the future. I.J.C. may have known that the particular parenting arrangement was temporary at first, but "that it went downhill" after they started sharing custody. He then did not hear from B.J.M. for over a year.

¶24 Although *Adoption of Doe* did establish that involuntary separations due to incarceration do not necessarily rise to the level of abandonment in every case, the Court's decision there hinged on the determination that even though she was in prison, the mother clearly intended to resume care of her children in the future. *Adoption of Doe*, 277 Mont. at 258, 921 P.2d at 879-80. Here, B.J.M. did not manifest the intention to resume custody, or even maintain contact with K.P.M. while she was incarcerated. Under the circumstances of this case, the District Court did not err in considering B.J.M.'s time in prison and residential drug treatment--during which she had no contact with her son--as evidence she abandoned K.P.M.

¶25 The District Court found that B.J.M. failed to make any contact with K.P.M. for fifteen months. This time exceeds the six month requirement for application of § 41-3-102(1)(a)(ii), MCA. Also, before and during her absence, B.J.M. failed to manifest any

intention she would someday resume physical custody or make permanent legal arrangements for K.P.M. Section 41-3-102(1)(a)(ii), MCA.

¶26 In light of the record showing that during her periods of absence, B.J.M. was struggling with an abusive relationship, was using illegal drugs, and was running with known criminals, and because B.J.M. previously failed to follow through on her commitments to care for and visit with K.P.M., it was reasonable for the District Court to find that she did not intend to resume care of K.P.M. in the future, regardless of any understanding that the initial informal parenting plan was temporary. *See* § 41-3-102(1)(a)(i), MCA.

¶27 We conclude the District Court's finding that B.J.M. abandoned her son, as defined by § 41-3-102(1)(a), MCA, and thus was an unfit parent, is supported by substantial evidence. It is not apparent the District Court misapprehended the effect of the evidence, and we are not left with the firm conviction that the court made a mistake. The District Court's finding that B.J.M. was unfit is not clearly erroneous.

¶28 We defer to the District Court's ability to judge the credibility of witnesses and to resolve any conflicts in the evidence. *In re Marriage of Pearson*, 1998 MT 236, ¶ 56, 291 Mont. 101, 965 P.2d 268. A trial court is in a better position than the appellate court to judge the credibility of testimony. Absent a clear preponderance of the evidence against the district court's valuation, its findings of fact will not be disturbed on appeal when based on substantial though conflicting evidence. *In re Marriage of Milesnick*, 235 Mont. 88, 95, 765 P.2d 751, 755 (1988). Thus, because we have determined the District Court's findings were not clearly erroneous, we base our analysis on the facts it found true.

11

¶29 S.J.D. initially filed her petition for adoption under the impression that she had B.J.M.'s consent to do so. As soon as S.J.D. knew B.J.M. would not consent, she followed the statutory mandate and filed her petition to terminate B.J.M.'s parental rights, pursuant to § 42-4-302(3), MCA, to accompany the petition for adoption in this same proceeding. Thus, her petition to terminate parental rights is proceeding contemporaneously with her petition for adoption, and she has complied with § 42-4-310, MCA. While the dissent would dismiss S.J.D.'s petition to adopt for failure to follow the correct statutory procedure, that matter was neither raised in the appellate briefs, nor was it an issue before the District Court in its consideration of the petition to terminate parental rights. This Court will not consider issues not raised or briefed. M. R. App. P. 12(1); *See State v. Slade*, 2008 MT 341, ¶ 23, 346 Mont. 271, 194 P.3d 677.

¶30 Lastly, B.J.M. argues that the District Court erred when it found B.J.M. failed to support K.P.M. when she was able to do so for one year prior to the filing of the petition for adoption. *See* § 41-2-608(c), MCA. Because we affirm the District Court's finding of unfitness based on abandonment, we need not address B.J.M.'s lack of support argument.

## CONCLUSION

¶31 We conclude the District Court's finding that B.J.M. was an unfit parent, pursuant to § 42-2-608(1)(b), MCA, is not clearly erroneous. The District Court's judgment that B.J.M.'s parental rights are terminated and that K.P.M. is available for adoption is affirmed.

/S/ JOHN WARNER

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE

Justice James C. Nelson dissents.

¶32    I dissent from the Court's Opinion in this case because S.J.D. did not have standing to bring a petition for termination of B.J.M.'s parental rights, and because S.J.D. did not follow the required statutory procedure in petitioning to adopt K.P.M.  I am not suggesting here that B.J.M. should be granted sole custody of K.P.M., or even that B.J.M. should be granted unlimited visitation with K.P.M., nor am I unmindful of what may be in the best interests of K.P.M.  I am simply stating that B.J.M.'s fundamental right to parent K.P.M. should not be terminated without following the proper statutory criteria set forth by the Legislature.

¶33    The Majority complain that "[n]owhere, in either party's pleadings, in their proposed findings of fact and conclusions of law, in the evidence at the hearing, in the post-hearing briefing, in the District Court's order, or in the briefing to this Court, is there any contest to the fact that S.J.D. has standing to petition to terminate B.J.M.'s parental rights and to adopt K.P.M." Opinion, ¶ 20.  However, the Majority ignore the fact that standing is a doctrine involving justiciability and, as such, it is a threshold requirement in every case which we must address and decide *sua sponte* even if it is not raised by a litigant.  *See Matter of Paternity of Vainio*, 284 Mont 229, 235, 943 P.2d 1282, 1286 (1997).  The standing

13

requirement cannot be waived by failure to, or agreement not to, object. *Armstrong v. State*, 1999 MT 261, ¶¶ 3-5, 296 Mont. 361, 989 P.2d 364 (internal citations omitted); *Jones v. Montana University System*, 2007 MT 82, ¶ 48, 337 Mont. 1, 155 P.3d 1247, *cert. denied*, ___ U.S. ___, 128 S. Ct. 401 (2007). If a party seeking to invoke the jurisdiction of the court does not meet the minimum constitutional requirements for standing, the court must dismiss the action for lack of jurisdiction. *See In re Parenting of D.A.H.*, 2005 MT 68, ¶ 8, 326 Mont. 296, 109 P.3d 247; *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103-04, 118 S. Ct. 1003, 1017 (1998); *Raines v. Byrd*, 521 U.S. 811, 818-20, 829-30, 117 S. Ct. 2312, 2317-18, 2322-23 (1997); *Warth v. Seldin*, 422 U.S. 490, 501-02, 95 S. Ct. 2197, 2206-07 (1975).

¶34 The Montana Adoption Act (Title 42, MCA) was enacted in 1997 as part of a general revision and recodification of Montana's adoption statutes. *See* 1997 Mont. Laws, chapter 480. The Adoption Act sets forth specific procedures to be followed in the adoption of a child. For example, § 42-1-107(1), MCA, provides that "[a]n adoption decree may not be entered if the child who is the subject of an adoption proceeding is not legally free for adoption." And, § 42-2-602, MCA, provides that "[a] child is not legally free for adoption until the parental rights of the birth parent or parents have been terminated by a court: (1) as provided in this title [Title 42]; [or] (2) pursuant to Title 41, chapter 3 [the Child Abuse and

14

Neglect Act]1 . . . ."

¶35 Section 42-2-603, MCA, provides that, under Title 42, a petition for termination of parental rights may be filed by (1) the Department of Public Health and Human Services (DPHHS); (2) a licensed child-placing agency; (3) the prospective adoptive parent to whom a relinquishment has been issued; or (4) a guardian with custody of the child. Because S.J.D. is not one of the parties listed in this statute, she does not have standing to bring a petition for termination of B.J.M.'s parental rights.

¶36 An "agency" is defined in § 42-1-103(4), MCA, to mean "a child placement agency licensed by the state of Montana pursuant to Title 52, chapter 8, that is expressly empowered to place children preliminary to a possible adoption." In this case, neither DPHHS nor a licensed child-placing agency was involved in S.J.D.'s attempt to adopt K.P.M. or in bringing a petition to terminate B.J.M.'s parental rights. Consequently, neither of these two provisions of the statute confer standing on S.J.D.

¶37 Section 42-2-603(2), MCA, also provides that a termination of parental rights may be filed by "the prospective adoptive parent *to whom the relinquishment is issued* [emphasis added]." "Relinquishment" is defined at § 42-1-103(18), MCA, as the "informed and *voluntary release* in writing of all parental rights with respect to a child by a parent to an agency or individual [emphasis added]." Hence, § 42-2-603(2), MCA, contemplates that the

---

1 The Child Abuse and Neglect Act does not apply here because a termination of parental rights under that Act may only be brought by the county attorney, the attorney general, or an attorney hired by the county, § 41-3-422(2), MCA, none of whom did so in this case.

birth parent or parents have voluntarily relinquished their parental rights in favor of the adoptive parent and consented to the adoption.

¶38 In the case *sub judice*, S.J.D. claimed in her Petition for Adoption that B.J.M. had executed a Consent to Adoption, however, no Consent to Adoption by B.J.M. was filed with the petition, nor was one ever filed. B.J.M. did not voluntarily relinquish her parental rights, nor did she consent to the adoption. Thus, S.J.D. does not have standing to petition for termination of parental rights under this provision of the statute.

¶39 In addition, § 42-2-603(2), MCA, provides that a petition for termination of parental rights may be filed by a guardian with custody of the child. While the term "guardian" is not defined in the Adoption Act, it is defined in the Montana Youth Court Act (Title 41, chapter 5, MCA) at § 41-5-103, MCA, as follows:

> (21) "Guardian" means an adult:
> (a)　who is responsible for a youth and has the reciprocal rights, duties, and responsibilities with the youth; and
> (b)　*whose status is created and defined by law*. [Emphasis added.]

Similarly, "custody" is not defined in the Adoption Act, nor does § 42-2-603(2), MCA, indicate whether it refers to legal custody or physical custody. Nevertheless, "physical custody" is defined in the Uniform Child Custody Jurisdiction and Enforcement Act (Title 40, chapter 7, MCA) at § 40-7-103(14), MCA, as "the physical care and supervision of a child." "Legal custody" is defined in the Youth Court Act, again at § 41-5-103, MCA, as follows:

> (29) (a) "Legal custody" means *the legal status created by order of a court of competent jurisdiction* that gives a person the right and duty to:

16

(i)     have physical custody of the youth;

(ii)    determine with whom the youth shall live and for what period;

(iii)   protect, train, and discipline the youth; and

(iv)    provide the youth with food, shelter, education, and ordinary medical care.

(b)     An individual granted legal custody of a youth shall personally exercise the individual's rights and duties as guardian unless otherwise authorized by the court entering the order.  [Emphasis added.]

¶40    Under these statutory definitions, although S.J.D. has "physical custody" of K.P.M. by virtue of the fact that she is married to and living with I.J.C. who has "legal custody" of K.P.M., S.J.D. is not the actual "guardian" of K.P.M. with "status . . . created and defined by law."  Rather, that position is held by I.J.C., and, although S.J.D. asserted in her petition to terminate that she was filing the petition in conjunction with I.J.C., I.J.C. did not sign the petition.

¶41    Consequently, because S.J.D. was not one of the parties authorized to bring a petition for termination of parental rights under § 42-2-603(2), MCA, she did not have standing to bring said petition.

¶42    The Majority claim that "§ 42-2-603(2), MCA, does not state that the only persons or entities that may file a petition to terminate parental rights are those that fall into one of the listed categories."  Opinion, ¶ 18.  However, the Majoriy choose to ignore that nowhere in § 42-2-603(2), MCA, does it state that a petition for termination of parental rights may be brought by anyone other than those persons or entities that fall into one of the listed categories.  It is axiomatic that it is not the role of a judge to insert what has been omitted from a statute or to omit what has been inserted.  Section 1-2-101, MCA.  Moreover, under

17

the canon *expressio unius est exclusio alterius,* we interpret the expression of one thing in a statute to imply the exclusion of another. *McCormick v. Brevig*, 2007 MT 195, ¶ 48, 338 Mont. 370, 169 P.3d 352 (citing *State v. Good*, 2004 MT 296, ¶ 17, 323 Mont. 378, 100 P.3d 644).

¶43     In addition, while a stepparent has standing to file a *petition for adoption* under the criteria set forth in § 42-4-302(1), MCA, a stepparent does not have standing to file a *petition for termination of parental rights*. As noted previously, § 42-1-107(1), MCA, provides that "[a]n adoption decree may not be entered if the child who is the subject of an adoption proceeding is not legally free for adoption," and a child is not legally free for adoption until the parental rights of the birth parent or parents have been terminated by a court. Section 42-2-602, MCA.

¶44     The Majority contend that this interpretation of the statutes would mean that no one would have standing to petition to terminate B.J.M.'s parental rights because there is no guardian. Opinion, ¶ 19. This is entirely untrue. The Uniform Parentage Act (Title 40, chapter 6, part 1, MCA) defines the parent and child relationship as "the *legal relationship* existing between a child and the child's natural or adoptive parents *incident to which the law confers or imposes rights, privileges, duties and obligations*." Section 40-6-102(2), MCA (emphasis added). In an earlier proceeding, the District Court granted I.J.C.'s petition to establish that I.J.C. was K.P.M.'s natural father and to give I.J.C. legal custody of K.P.M. As already noted, a "guardian" means "an adult . . . who is responsible for a youth and has the reciprocal rights, duties and responsibilities with the youth . . . ." Section 41-5-103(21),

18

MCA. Clearly I.J.C. is K.P.M.'s guardian with all the concomitant rights, duties and responsibilities to K.P.M., and, as such, I.J.C. had standing to file for termination of B.J.M.'s parental rights pursuant to § 42-2-603(2), MCA. However, he failed to do so.

¶45 I also disagree with the Majority's position that because S.J.D. had standing to petition for adoption of K.P.M., she also had standing to petition to terminate B.J.M.'s parental rights. Opinion, ¶ 14. While § 42-4-302(3), MCA, states that "[a] petition for adoption by a stepparent may be *joined* with a petition for termination of parental rights [emphasis added]," that does not give a stepparent standing to actually file a petition for termination. Rather, a stepparent may join their petition for adoption with the natural parent's petition for termination of parental rights. This more logically follows from the plain language of the statute since a stepparent needs the custodial parent's consent to adopt under §§ 42-4-303, MCA. Thus, contrary to the Majority's contentions, S.J.D. did not seek and obtain the termination of B.J.M.'s parental rights "*in compliance* with § 42-4-310, MCA." Opinion, ¶ 17 (emphasis added).

¶46 The Majority also contend that previous applications of Title 42 are consistent with the Majority's interpretation. Opinion, ¶ 20. The Majority fail to point out however that all but one of the cases cited in the Opinion as a "previous application" of Title 42 actually pre-date Title 42 as it exists today. Title 42 was completely revised in 1997, *see* 1997 Mont. Laws, chapter 480, and the statute providing the criteria for termination of parental rights was added at that time long after most of the cases cited by the Majority were decided. Prior to 1997, it was only necessary for a stepparent to bring a petition for adoption; a petition for

19

termination of parental rights was not required. *See* Title 40, chapter 8, MCA (1995) (repealed 1997 Mont. Laws, chapter 480, § 171).

¶47 Furthermore, one of the cases the Majority cite, *Matter of Adoption of J.B.T.*, 250 Mont. 205, 819 P.2d 178, runs counter to the Majority's argument as the petition in that case was brought by *both* the natural mother and the stepfather. This Court also stated in that case that "[b]ecause the natural parent can forever lose parental rights, this Court requires *strict compliance* with the statute." *Adoption of J.B.T.*, 250 Mont. at 208, 819 P.2d at 179 (emphasis added). As to the only case cited by the Majority that was decided after the 1997 revisions to the Adoption Act, *In re Adoption of C.W.D.*, 2005 MT 145, 327 Mont. 301, 114 P.3d 214, the issue of standing was not raised or decided by this Court. However, our failure to *sua sponte* raise the question of standing in that case does not permit this Court to perpetuate that error.

¶48 Based on the foregoing, I would hold that the District Court lacked jurisdiction to grant S.J.D.'s petition to terminate B.J.M.'s parental rights to K.P.M. because S.J.D. did not have standing to bring such a petition. I dissent from the Court's failure to so hold.

¶49 I also dissent from the Opinion in this case because S.J.D. did not follow the required statutory procedure in petitioning to adopt K.P.M.

¶50 This Court has repeatedly held that "a natural parent's right to care and custody of a child is a fundamental liberty interest, which must be protected by fundamentally fair procedures." *In re J.N.*, 1999 MT 64, ¶ 12, 293 Mont. 524, 977 P.2d 317 (quoting *In re E.W.*, 1998 MT 135, ¶ 12, 289 Mont. 190, 959 P.2d 951; *Matter of R.B.*, 217 Mont. 99, 103,

20

703 P.2d 846, 848 (1985)). Hence, each applicable statutory requirement must be adequately addressed before a district court may terminate an individual's parental rights. *In re J.N.*, ¶ 12 (citing *In re E.W.*, ¶ 12; *Matter of R.B.*, 217 Mont. at 103, 703 P.2d at 848). Moreover, "[t]he party seeking to terminate an individual's parental rights has the burden of proving by clear and convincing evidence *that the statutory criteria for termination have been met.*" *In re J.N.*, ¶ 12 (citing *In re E.W.*, ¶ 12; *Matter of J.L.*, 277 Mont. 284, 288, 922 P.2d 459, 461 (1996)) (emphasis added).

¶51    Of particular relevance to the instant case are §§ 42-4-310 and 42-2-603, MCA. Section 42-4-310, MCA, provides that "[a] stepparent who desires to adopt a stepchild *shall obtain* an order of termination of parental rights of the child's noncustodial parent *prior to or contemporaneously with* the petition to adopt [emphasis added]." Contrary to the statement at ¶17 of the Opinion, S.J.D. did not comply with this statute. S.J.D. filed her petition to adopt K.P.M. on March 13, 2007. She did not, as required by § 42-4-310, MCA, obtain an order of termination of B.J.M.'s parental rights "prior to or contemporaneously with" filing her petition to adopt K.P.M. In fact, she did not file a petition to terminate B.J.M.'s parental rights to K.P.M. until May 8, 2007, almost two months after filing the petition to adopt.

¶52    The Majority assert that following the correct statutory procedure is not a matter that was raised in the appellate briefs, nor was it an issue before the District Court in its consideration of the petition to terminate parental rights. Opinion, ¶ 19. On the contrary, the record shows that B.J.M. raised this issue in her "Hearing Brief" filed in the District Court on January 23, 2008. There B.J.M. argued that S.J.D.'s petition was "deficient" because S.J.D.

21

did not follow the criteria set forth by the Legislature in Title 42. In support of her argument, B.J.M. specifically cited to §§ 42-2-301, 42-4-310, and 42-5-101, MCA. B.J.M. raised this issue again, citing to the same statutory criteria, in her "Post Hearing Brief" filed with the District Court on February 19, 2008.

¶53 Moreover, B.J.M. stated at page 11 of her Appellant's Brief:

> The party seeking to terminate parental rights must demonstrate by clear and convincing evidence *that the statutory requirements for termination have been met. In re the Matter of A.S., Youth in Need of Care*, 2006 MT 281, ¶ 6, 334 Mont. 280, 146 P.3d 778. [Emphasis added.]

B.J.M. also stated at page 19 of her Appellant's Brief and again at page 8 of her Reply Brief that S.J.D. "has failed to provide clear and convincing evidence that the statutory requirements for termination have been met." Even so, whether the correct statutory procedures have been followed is a threshold issue in every case.

¶54 In addition, § 42-5-101, MCA, provides:

> (2) There *must* be attached to or accompanying the petition [for adoption]:
> (a) any written consent required by 42-2-301;
> (b) a certified copy of any court order terminating the rights of the child's parents . . . . [Emphasis added.]

Although S.J.D. claimed in her Petition for Adoption that B.J.M.'s written consent was attached to the petition, that was not the case as B.J.M never consented to the adoption. Because B.J.M.'s parental rights had not been terminated at the time the Petition for Adoption was filed, S.J.D. did not and could not attach "a certified copy of any court order

22

terminating the rights of the child's parents," as provided for in § 42-5-101(2)(b), MCA, to the Petition for Adoption.

¶55 Consequently, I would reverse the District Court's decision to terminate B.J.M.'s parental rights because S.J.D. did not follow the statutory requirements for bringing her petitions and I dissent from this Court's failure to so hold.

¶56 Furthermore, while the Court places great emphasis on B.J.M.'s lifestyle at the time she placed K.P.M. in I.J.C.'s care, no mention is made of the fact that B.J.M. has worked hard to turn her life around. She is now married, has another child and a steady job. The Court also does not mention that the death of her first child, while she was pregnant with K.P.M., sent B.J.M. into a depression that contributed to her inability to properly care for K.P.M. Although I do not condone the path she chose to take after the loss of her child, I do recognize the fact that she had the sense to place K.P.M. in a stable environment.

¶57 The District Court terminated B.J.M.'s parental rights on the basis that she had abandoned K.P.M. While I applaud I.J.C. and S.J.D. for the love and care they have given K.P.M. in the intervening years, I cannot help but note that some small part of the blame for B.J.M.'s abandonment of K.P.M. was caused by I.J.C.'s continued refusal to allow B.J.M. to see him—facts conveniently left out of the Opinion in this case.

¶58 I make one final observation. The Legislature adopted significant amendments to the Adoption Act in 1997. If one reviews the legislative history to those amendments, one is struck by the Legislature's intent to preserve the parental rights of the biological parents to a child. Indeed, this follows the policy of this State "to support and preserve the family as the

23

single most powerful influence for ensuring the healthy social development and mental and physical well-being of Montana's children." Section 41-7-102(1), MCA (the Montana Family Policy Act enacted in 1993). While no doubt well-meaning, the Majority do not respect that legislative commitment. Rather, the Majority's approach ignores the statutory framework which the Legislature set out to preserve the fundamental rights of biological parents.

¶59    I dissent.

/S/ JAMES C. NELSON

Justice Patricia O. Cotter joins the Dissent of Justice James C. Nelson.

/S/ PATRICIA COTTER